555 So.2d 1039 (1990)
Randy J. AVERY
v.
STATE of Mississippi.
No. 07-58022.
Supreme Court of Mississippi.
January 10, 1990.
*1040 Cliff R. Easley, Jr., Easley & Cooper, Bruce, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Jack B. Lacy, Jr., Asst. Dist. Atty., Eupora, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

ON PETITION FOR REHEARING

I.
The original opinion in this case is withdrawn and this opinion affirming is substituted therefor.
At issue today is whether we will take seriously the rule that requires that one arrested and charged with a crime be given a preliminary hearing within a reasonable time. Today's appellant repeatedly sought a preliminary hearing following his arrest and was repeatedly rebuffed. The opportunities for confrontation of witnesses and pre-trial discovery thus denied, however, were afforded Avery on his first trial which ended in a mistrial. When he was brought to trial again, Avery was in as good (if not better) a position as he would have been in had his rights not been denied.
We affirm.

II.
On March 19, 1985, Webster County law enforcement authorities arrested Randy J. Avery and charged him with four felony offenses,[1] one of which is the present charge of sale of more than one ounce but less than one kilogram of marijuana. Bond was set and Avery was released less than twenty-four hours after his arrest.
Avery repeatedly requested a preliminary hearing. Judge Travis Pittman, Justice Court Judge for Webster County, in response to questioning by Avery's attorney, testified
Q. Now, Judge Pittman, did you set, or schedule a preliminary hearing for this Defendant on these charges?
A. We didn't have a preliminary hearing.
Q. Did the Defendant through his counsel request a preliminary hearing?
A. You did. We have a copy of your letter out here in the docket where you requested preliminary hearings on these cases.
Q. And, were motions filed with you requesting a preliminary hearing?
A. Yes, sir; from you.
* * * * * *
Q. You didn't have them to furnish. And, did you discuss with Mr. George Mitchell, the acting County Attorney, or assistant District Attorney, about scheduling a preliminary hearing for the Defendant?
A. Yes, sir, but I understood the District Attorney was rather busy, and we never did get into a preliminary hearing.
Q. And, it certainly wasn't anything that was the fault of this Defendant that there wasn't a preliminary hearing granted, was it?
A. No, sir.
Joy Davis, Justice Court Clerk, confirmed that Avery's attorney had requested a preliminary hearing and exhibited a formal motion for preliminary hearing filed in the Justice Court of Webster County on April 18, 1985. That motion recites a series of efforts by Avery to obtain a preliminary hearing beginning with an April 3, 1985, telephone call to the County Attorney of Webster County followed up by a letter *1041 to the District Attorney and other informal requests.
On May 6, 1985, the Grand Jury of Webster County returned an indictment charging Randy J. Avery with sale of marijuana on February 27, 1985, in violation of Miss. Code Ann. § 41-29-139(a)(1), (b)(2) (Supp. 1984). On the following day, May 7, 1985, Avery filed in the Circuit Court a motion for a preliminary hearing, invoking the provisions of Rules 1.04 and 1.07, Miss.Unif. Crim.R.Cir.Ct.Prac. (1979, as amended).
Thereafter, on May 20, 1985, the Circuit Court heard Avery's motion and in the end stated:
The purpose and the function of a preliminary hearing is to assure prisoners that they are not being held without probable cause or without a judicial determination that they should be held  arrested and held and that they should be given an opportunity for bond. That is the purpose of a preliminary hearing. This man was not retained any undue or extraordinary amount of time in jail, but was  had bond set for him and was, and was released upon bond being made. .. . The function of a preliminary hearing was accomplished. The motion is overruled.
In November of 1985, Avery stood trial in the Circuit Court of Webster County. The Court ultimately declared a mistrial, however, as the jury was unable to reach a verdict.
In May of 1986, Avery was put to trial on the charge laid in the indictment once again. On May 30, 1986, Avery was adjudged guilty as charged, whereupon the Court sentenced him to the custody of the Mississippi Department of Corrections for a term of five years. This appeal has followed.

III.
The pretrial process commonly known as a preliminary hearing has been a part of our law of criminal procedure for many years. In 1979 we formalized the process by adopting Rules 1.04 and 1.07, Miss.Unif. Crim.R.Cir.Ct.Prac. Rule 1.04 provides that every person arrested shall be taken before a judicial officer without unnecessary delay and that the judicial officer shall set a date for a preliminary hearing "within a reasonable time."[2] The Rule further provides that the preliminary hearing "shall be heard on the set date" and then, significantly, the Rule provides that a preliminary hearing may be waived only "in writing or in open court and upon the advice of counsel." There is no suggestion that Avery waived his right to a preliminary hearing. Indeed, it affirmatively appears that he repeatedly requested such.
Rule 1.07 then prescribes the procedure to be followed at the preliminary hearing.[3]
*1042 These Rules confer upon every accused rights he or she may enjoy unless waived in writing. From what has been said, it would appear certain that Avery's right to a preliminary hearing has been denied. The Circuit Court acknowledged as much but held in effect that this did not matter because the purpose of the preliminary hearing was to determine probable cause and to set bond. See our pre-Rules cases, e.g., Glass v. State, 278 So.2d 384, 387 (Miss. 1973); Stevenson v. State, 244 So.2d 30, 32-33 (Miss. 1971); McLelland v. State, 204 So.2d 158, 161 (Miss. 1967). These things done, the Circuit Court held in effect that Avery's point was moot. A careful reading of Rules 1.04 and 1.07 will not admit of this construction.
For one thing, setting bond and establishing probable cause are not the only purposes of a preliminary hearing. Rule 1.07 provides that witnesses produced by the prosecution at the preliminary hearing shall be examined on oath "in the presence of the defendant." The Rule further provides that "the defendant may cross-examine the witnesses against him." We have recently recognized that one of the primary purposes of a preliminary hearing is "to permit the defendant to confront his accusers." Shook v. State, 552 So.2d 841, 850 (Miss. 1989). Herring v. State, 522 So.2d 745, 751 (Miss. 1988) recognizes the point as well.
It is common knowledge that defendants use preliminary hearings for discovery. The procedure outlined in Rule 1.07 allows compulsory process and frequently entitles the defendant to cross-examine the investigating officers, the victim and other witnesses. In practical effect this affords a defendant the opportunity for a limited pre-trial deposition of key prosecution witnesses. The purposes of confrontation and discovery are hardly rendered moot once bond has been set or even when an indictment has been returned. Anything to the contrary in Herring, 522 So.2d at 751 must be deemed a misreading of the Rule.
The fact that bond has been set extra-judicially, as here, does not necessarily pretermit the judicial bond setting function of the preliminary hearing. The law empowers the judge presiding at the preliminary hearing to modify the terms and conditions of the accused's release pending trial. Beyond this, the probable cause determination generated by an adversary proceeding at preliminary hearing is qualitatively different  and of more value to the accused  than ex parte findings by a magistrate issuing a warrant or even a grand jury considering indictment.[4] The point in the end is Rules 1.04 and 1.07 prescribe the rights and conditions upon which the accused may have a preliminary hearing. So long as the Rules' prescription be honored, the accused may use the preliminary hearing for any lawful purpose.
We have no doubt that historically the Rules arose for the purposes recited by the circuit judge. There is nothing in the Rules as presently written, however, which directly or indirectly limits their effect to those purposes nor, more importantly, is there anything in the Rules which extinguishes the rights conferred upon the accused once the setting of bond and determination of probable cause have been made. The point for the moment is that the Rules supersede any limiting expressions in our pre-Rules case law. Cf. Leatherwood v. State, 548 So.2d 389, 399 (Miss. 1989).
It is no answer that the accused enjoys no federal constitutional right to a preliminary hearing. See Pennsylvania v. *1043 Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). The right at issue today has its source wholly in the law of this state and is in no way dependent upon federal law to make it valid or enforceable. See Michigan v. Long, 463 U.S. 1032, 1037-44, 103 S.Ct. 3469, 3474-78, 77 L.Ed.2d 1201, 1212-16 (1983).
A like issue was before the Court in Lambert v. State, 524 So.2d 576 (Miss. 1988). In a concurring opinion authored by Presiding Justice Dan M. Lee and joined by four other Justices, Lambert rejects the idea that the purpose of a preliminary hearing is limited to determining probable cause and fixing bond. In Lambert the prosecution had argued that by posting bond the defendant had waived his right to a preliminary hearing. The Lambert concurrence rejects that view, for the reason that Rule 1.04 makes crystal clear that the only way an accused may waive his right to a preliminary hearing is to do so "in writing or in open court and upon advice of counsel." 524 So.2d at 581.
We are particularly concerned at the paucity of reasons given in the record why Avery's requests for a preliminary hearing were not honored.[5] In his motion filed in the Justice Court, Avery through counsel charges that he contacted the County Attorney of Webster County and "was advised that he [the County Attorney] did not handle felony cases in Webster County for the State." Justice Court Judge Pittman said, "I understood the District Attorney was rather busy and we never did get into a preliminary hearing." These points are neither elaborated upon nor denied elsewhere in the record. What is clear is that Avery was arrested on March 19, 1985, that a valid rule of law enforceable in this state conferred upon him a right to a preliminary hearing "within a reasonable time" thereafter, and that Avery never received a preliminary hearing. The Circuit Court erred when it denied Avery's motion for a preliminary hearing.
We have considered whether denial of Avery's right requires reversal. We are particularly sensitive to the fact that, prior to the trial at which he has been convicted, Avery enjoyed more opportunity for confrontation and discovery than would ordinarily have been the case, albeit fortuitously. Avery's first trial, which ended in a mistrial, afforded these opportunities, and because of this we cannot in candor say that, as he entered the trial which led to the present conviction, Avery was at a disadvantage by reason of his not having had a preliminary hearing. Cf. Davis v. State, 472 So.2d 428, 434 (Miss. 1985) (discovery violation by prosecution cured by allowing defendant opportunity to examine evidence during recess); Box v. State, 437 So.2d 19, 22-26 (Miss. 1983) (Robertson, J., specially concurring). In the peculiar state of the record, and because Avery suggests no other form of prejudice from the Circuit Court's refusal to order a preliminary hearing, we hold the error harmless beyond a reasonable doubt. Cf. Jackson v. State, 538 So.2d 1186, 1189 (Miss. 1989) (no prejudice resulted from denial of motion to continue where "appellant received a fair and impartial trial during which she was ably and vigorously defended"); Brown v. State, 252 So.2d 885, 888 (Miss. 1971) (same).

IV.
Avery next argues that the Circuit Court erred when it denied his motion to quash the petit jury venire. This case was set for trial during the second week of May, 1986 Term of Circuit Court, Webster County. On May 18, 1986, the day before trial, the court heard Avery's motion to quash the array of jurors for the second week, stating as his grounds (1) that the sheriff's department, after the first trial, contacted a juror who served on the first case (Eloise Morton) asking her why she had not voted to convict, (2) that the sheriff and his deputies wilfully failed to summons jurors for the second week, and (3) that the deputies excused certain jurors from jury *1044 service. Avery called to the witness stand Sheriff W.E. Middleton, Deputy Sheriff Wayne Jackson, Deputy Sheriff Ruben McCluskey, and former juror Eloise Morton. Randy J. Avery also testified himself in support of his motion. The prosecution did not call any witnesses to the stand.
Sheriff Middleton did not participate in the task of serving the jury summons. That duty was delegated to his deputy sheriffs. They were straightforward in saying how they attempted to find the jurors who were not served; they went to areas where they were supposed to live, they went to the post office and sought information to where they might be found, and the record reflects that they made diligent efforts to serve the jurors. Most of the prospective jurors were reported to be out of the county or could not be found in the county. Avery testified that two jurors, whom he personally knew were in the county, were not served and were marked "Not found."
Elois Morton testified that, after the first jury was discharged, she rode home with another juror. When she arrived there, the sheriff drove up and asked her why the jury did not reach a verdict of guilty. Eloise Morton told him she thought she was doing the right thing. According to her, the sheriff did not harass or threaten her; she knew the sheriff and he spoke in his usual manner and in an even tone; and that she thought nothing about the contact.[6] Nothing in the record indicates or insinuates that the sheriff, his deputies, or any other person tampered with the jury or purposely evaded serving jurors in order to stack the jury. One hundred (100) jurors were summoned for the second week, and fifty-three (53) of them were not found or were marked "out of the county." The Circuit Court, in its finding of fact and order overruling the motion to quash, took judicial notice that, after twelve years on the bench in the Fifth Circuit Court District, of which Webster County is a part, approximately one-third of the persons summoned were found and appeared for jury service. In the present case, approximately fifty percent were found and served.
Sheriff Middleton testified that the Circuit Judge told the deputies that anyone over sixty-five (65) years of age could be told they did not have to appear at court. The Judge said from the bench, "Let the record show that this judge takes notice that I allow that to be done." He explained the statement by saying that persons who claim their age to be over sixty-five (65), who had a medical certificate, or who are in a nursing home, or who are so incapacitated they obviously cannot serve, were not required to appear at the clerk's office or before the circuit judge. While we think that circuit judges should require affidavits as to age and sickness and incapacity to be filed with the circuit clerk and brought to the attention of the judge, in the present case there was no impact upon the juries and no semblance of dishonesty or unfairness in the selection of the jury.
In Tanner v. State, 190 So.2d 670, 672 (Miss. 1966), the Court held that no challenge to the array will be entertained unless there is radical departure from the statutory scheme. The State cites Peterson v. State, 268 So.2d 335 (Miss. 1972), to the effect that provisions for jury selection are merely directory. While that is a true statement, courts must make every reasonable effort to comply with the statutory method of drawing, selecting and serving jurors. The jury system must remain untainted and beyond suspicion. See Cook v. State, 90 Miss. 137, 153-54, 43 So. 618, 622 (1907). In this day of fast travel, persons are here today and gone tomorrow. Many people who register in a county are transients. Registration drives are conducted and people are registered who may not even be in the county as much as thirty (30) days, and then they move on to some other part of the state or country. Circuit judges who empanel juries at every term of *1045 the circuit courts fully know and understand the problem to which we refer.[7]
We have read everything in the record relating to this assignment of error, and are convinced that neither fraud nor unfairness was involved and that the jury was properly selected and empaneled.
The assigned Error II is rejected.

V.
We have carefully considered the last two assignments of error and the record insofar as it relates to them. Under the facts of this case and the law, we are of the opinion that there is no merit in those assigned errors, and they are rejected.
There being no reversible error in the trial below, the judgment of the lower court is affirmed.
PETITION FOR REHEARING DENIED; OPINION RELEASED NOVEMBER 2, 1988, WITHDRAWN AND OPINION RELEASED THIS DAY SUBSTITUTED THEREFOR; AFFIRMED.
DAN M. LEE, P.J., and PRATHER, SULLIVAN, ANDERSON and BLASS, JJ., concur.
ROY NOBLE LEE, C.J., concurs in part and dissents in part, joined by HAWKINS, P.J.
PITTMAN, J., not participating.

APPENDIX I
BY THE COURT:
The Court having examined the motion at issue and having heard the testimony of witnesses, received citations of authority, and heard argument of counsel, finds from this evidence that this case was tried at the November, 1985, Term of this Court, Judge James C. Sumner presiding, and that the trial resulted in a mistrial because of the failure of the jury to reach a verdict; that when the witness, Ms. Morton, who was a juror in that case went to her home the Sheriff appeared on the scene at about the time she got out of the car and he questioned her about the matter. The Court has received no authority that such an inquiry was illegal or incorrect, the matter being a post-trial matter. There is no evidence presented here on this hearing in all this record that anyone has attempted to talk to any juror or prospective juror for this week or for this case about what they should do if a juror in this case, or that there has been any attempt to influence anyone. The evidence has gone toward service of summons of jurors and that certain persons were not served who could have been found. Whether or not it is proper to go behind the return, the Court observes that no one is entitled  no party, that is  is entitled to any particular person as a juror. The party is entitled to an unprejudiced assembly from which to select a fair and impartial jury to try the issue, so the fact that someone who was summonsed does not appear is no evidence of prejudice to any party. The Court observes that this motion is heard prior to voir dire. Of course, the voir dire would develop prejudice, if any, but from the evidence on this motion no attempt of any  there is no evidence of any prejudice, no attempt to intimidate or attempt to discuss the case with any juror, and no contact with prospective jurors has been made, other than service of summons to be here. The Court finds the testimony of the deputy sheriffs to be clear and undisputed and from which it is apparent that many reasons affect the service of jury summons. The Court finds that the fact that the deputies did not find someone who actually is in the county is no evidence of any intent on their part or any wilful failure to serve the summons on a person because in this day and time people come and go frequently during the day. The Court takes judicial notice that, after twelve years on the Bench as a presiding officer, that over this District the Court will average about  having about one-third of the persons summonsed to serve as jurors. This Court, by Order on its Minutes, requires 150 persons to be summonsed for the first week and a hundred for each week thereafter during the Term. Having fifty percent of the persons summonsed to appear *1046 in Court is an average rate. On the first week the Court rarely has as many as seventy out of a hundred and fifty report. That is the reason there is difficulty between those summonsed for the first week and the second week, because the Court has to provide a Grand jury during the first week, and knows from long experience that it could not be so ordinarily from  by issuing 100 summonses. Of course, providing a fair and impartial jury, and a panel from which to select one, is a paramount duty of this Court. Tampering with a jury is as vicious a crime as we know and this Court, of course, would not condone it for one minute where there was any evidence of any impropriety. There is none in this record. Our jury selection laws are directory only. It is true that the fact they are directory only would not excuse actions for which  which would prejudice the jury panel from which the jury is to be selected. Persons who have been intimidated, talked to, prejudiced in any way which would prevent them from serving is a threat to our justice system, and this Court will not allow it, if it is aware of it. The Court is looking at the Defendant and takes notice that he is a white person and there is no evidence in this record to indicate any tampering with the jury, and the motion is overruled.
ROY NOBLE LEE, Chief Justice, concurring in part, dissenting in part:
I agree with, and concur in, the action of the Court denying the Petition for Rehearing. However, I do not agree that Rule 1.04, Uniform Criminal Rules of Circuit Court Practice, should be interpreted to overrule statutory and case law dating almost from the beginning of Mississippi jurisprudence.
I am of the opinion that a preliminary hearing was waived by the appellant in open court when he first appeared before the magistrate. Unif.Cr.R.Cir.Ct.Practice Rule 1.04(3). The purpose of a preliminary hearing is to determine whether there is probable cause to believe that an offense has been committed and whether the defendant committed it. If answered in the affirmative, the defendant is bound over to await the action of the next grand jury. Even Unif.Cr.R.Cir.Ct.Practice Rule 1.07 so provides.
Questions of confrontation and discovery are not involved here. Other rules supply the methods for obtaining discovery, e.g., information, evidence, etc. I shudder to think of "every arrested person  taken before a judicial officer without delay" in municipal and justice courts, being unable to waive except in writing or with counsel, a preliminary hearing. If literally applied and followed, Rule 1.04 would result in judicial turmoil and chaos.
HAWKINS, P.J., joins this opinion.
NOTES
[1] Another of these offenses has resulted in a conviction and reversal. Avery v. State, 548 So.2d 385 (Miss. 1989).
[2] In relevant part, Rule 1.04 reads as follows:

Every arrested person shall be taken before a judicial officer without unnecessary delay.
* * * * * *
The judicial officer shall inform the defendant of his right to a preliminary hearing, and a date for such hearing shall be set within a reasonable time. The preliminary hearing shall be heard on the set date, unless it is waived in writing or in open court and upon the advice of counsel. If preliminary hearing is waived by the defendant, the judicial officer shall bind the defendant over to the next grand jury.
Conditions under which the defendant may obtain release shall be determined at this time.
[3] Rule 1.07 reads as follows:

The preliminary hearing shall be heard by a judicial officer on the date set for such hearing at the defendant's initial appearance. Such process as is necessary to secure the attendance of witnesses within the state shall be issued by the judicial officer. Either party may request that the rule for sequestering the witnesses be invoked.
The defendant shall not be required to enter a plea at the preliminary hearing.
Witnesses produced at the preliminary hearing shall be examined on oath, and in the presence of the defendant, concerning the charged offense. The defendant may cross-examine the witnesses against him, and offer evidence in his own behalf. If the defendant elects to testify personally, he shall be warned in advance of taking the stand that anything he might say can be used against him at a subsequent trial. The state may cross-examine the defendant and any other witnesses who are offered in his behalf.
If from the evidence it appears that there is probable cause to believe that an offense has been committed, and the defendant committed it, the judicial officer shall bind the defendant over to the next grand jury. If from the evidence it appears that there is no probable cause to believe that an offense has been committed or that the defendant committed it, the defendant shall be discharged from custody. The discharge of the defendant shall not preclude the state from instituting a subsequent prosecution from the same offense.
[4] Among the Court's files regarding adoption of the Mississippi Uniform Criminal Rules of Circuit Court Practice (1979) we find a brief filed by the Mississippi State Bar which recognizes a significant "difference between a `probable cause' determination for arrest as required by the Fourth Amendment and a `probable cause' determination to bind over." The Bar observes that in the initial appearance described in Rule 1.04, Uniform Criminal Rules of Circuit Court Practice, receipt of hearsay and illegally obtained evidence is permissible while the preliminary hearing prescribed by Rule 1.07 accords a higher degree of protection to the accused.
[5] Nothing in the law makes an accused's entitlement to a preliminary hearing dependent upon a request. In the case at bar, however, Avery through his attorney requested a preliminary hearing.
[6] Eloise Morton said that the sheriff told her, before leaving, that "they" would get him (appellant) on the next trial.
[7] See Appendix I.