612 So.2d 1120 (1992)
George MAYFIELD
v.
STATE of Mississippi.
No. 90-KA-448.
Supreme Court of Mississippi.
December 31, 1992.
*1121 Jim Waide, Tupelo, for appellant.
Michael C. Moore, Atty. Gen., Jackson; John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the Court:
Today's decision repeats the sad and oft-told story of one who found tragedy at the bottom of a bottle of cheer. Appellant George Mayfield and his friends embarked on a pleasure outing in Mayfield's automobile. Mayfield agreed to drive because, despite a blood-alcohol level of 0.21, he was the most sober member of the group. A wreck occurred in which two of his friends perished. Mayfield was charged and convicted in the Circuit Court of Union County of two counts of vehicular homicide (hereinafter referred to as "aggravated D.U.I.")[1] *1122 and sentenced to ten years imprisonment in the custody of the Mississippi Department of Corrections. He appeals, assigning the following as error:
I. The trial court erred in granting an instruction on aggravated D.U.I. where Mayfield had been indicted and tried on a charge of manslaughter;
II. Mayfield's two-part conviction violates the state and federal prohibitions against double jeopardy;
III. The manslaughter statute under which Mayfield was charged is unconstitutionally vague;
IV. The trial court erred in refusing to continue Mayfield's preliminary hearing so that he might subpoena witnesses;
V. The trial court erred in refusing to dismiss Mayfield's manslaughter indictment since the legislature did not intend one who kills another through drunk driving to be charged with the greater offense of manslaughter.
Finding that Mayfield committed only one act in violation of Mississippi's aggravated D.U.I. statute, we reverse his count-two conviction on grounds of double jeopardy. The conviction on the first count is affirmed.

FACTS
On the night of April 29, 1989, George Mayfield and several friends set out from Mayfield's home in Tupelo, Mississippi, to attend a concert in Memphis, Tennessee. The party traveled in a Ford Escort owned and driven by Mayfield. Mayfield, by his own admission, was drunk.
Around 8:00 p.m., truck driver Joe Reece was traveling west on a two-lane segment of Highway 78. According to Reece's testimony, a Ford Escort ignored a "yield" sign and pulled into Highway 78 immediately in front of him at the intersection of Highway 78 and Old Highway 78. Reece stated that he avoided hitting the Escort only by swerving and by bringing his truck almost to a stop. He blew his horn, whereupon the two passengers in the back seat of the Escort turned around, laughed, and made obscene gestures. Angered, Reece began to pursue the Escort to get its tag number. He was unable to catch up with the car despite having increased his speed to about seventy-five miles an hour. Reece observed that the Escort was "all over the highway" and almost struck a bridge abutment at one point. Reece stated that he reached down to get his C.B. radio microphone in order to call the police. "When I looked back up," Reece testified,
I could see another truck coming; and ... they had lost it; and they were all the way over in this lane; and they went back over on the right and lost it in the gravel and shot back across in front of the truck; and I thought they was going to get the truck head on.
So I went ahead and started stepping on my brakes trying to stop; but if they hit the truck head on, I didn't want to be in the accident. So, as I started stopping, they went back in front of the truck and didn't hit it head on. Whenever they went back across in front of the truck I lost them. The headlights of the other truck coming at me, it took my sight. All I could see was sparks when they hit the side of the tractor trailer and the trailer.
Darryl Carpenter was driving the eighteen-wheeler Peterbilt involved in the accident. He testified that he first saw the oncoming Ford Escort when it was about 100 feet away. Carpenter stated that the Escort
was passing another truck; and he was in my lane. I hit the brakes; but I seen I was going to [hit] him head on, so I went to the right hand shoulder and tried to avoid him. He still connected with my trailer, tractor tires, and spun up under my trailer.
Reece stopped at the scene of the accident and notified the Myrtle Police Department by radio. He saw two bodies, obviously dead, lying across the center lane of *1123 the highway. He also observed "plastic and beer cans and stuff laying on the road." The driver and a front-seat passenger crawled out of the car and started throwing beer cans into the ditch.
Mississippi Highway Patrol Staff Sergeant Mickey Baker testified that he investigated the accident. He stated that Mayfield was driving with a suspended driver's license at the time of the accident, that the Escort's inspection sticker was out of date, and that a bottle of Mescal Tequila was found on the back floorboard of the car. According to Baker, Mayfield's blood-alcohol level registered 0.21 when tested at the hospital subsequent to the accident. After being qualified as an accident reconstruction expert, Baker testified that Mayfield was traveling in excess of the posted speed limit when the wreck occurred.
Mayfield testified in his own behalf. According to his account, he volunteered to drive to Memphis because he was less drunk than the others. (He admitted, however, that his blood-alcohol level tested at 0.21 subsequent to the accident). Although he described the sequence of events in much the same way as the truck driver witnesses, he insisted that he ran off the road because the truck behind him failed to dim its lights. He stated that he lost control of his car after his wheels slipped off the edge of the pavement.
On cross-examination, Mayfield conceded that he had two prior D.U.I. convictions, one in 1985 and one in February, 1989, only two months before the fatal accident.
To substantiate Mayfield's claim that the accident happened because his right tires slipped off the pavement just before meeting the Peterbilt (and not because of his drinking), the defense put on evidence that Mayfield's car was out of alignment at the time of the accident, causing it to pull to the right. Accident reconstructionist Baker testified, however, that "the shoulder of the road in this area is at or near level with the road surface. A person should have been able to drive his car off the shoulder and back onto the shoulder without any problem with his car."
James Gilder and Jo Ellen Powell died in the crash.

LAW

I.

DID THE TRIAL COURT ERR IN GRANTING AN INSTRUCTION ON AGGRAVATED D.U.I. WHERE MAYFIELD HAD BEEN INDICTED AND TRIED ON A CHARGE OF MANSLAUGHTER?
Mayfield was tried on an indictment which charged the defendant with two counts of manslaughter by culpable negligence pursuant to Miss. Code Ann. § 97-3-47 (1972):
COUNT I
That GEORGE W. MAYFIELD, ... on or about the 29th day of April, 1989, ... did unlawfully and feloniously, without authority of law, kill and slay a human being, to-wit James H. Gilder, Jr., by his culpable negligence when he, the said GEORGE W. MAYFIELD, did cause the motor vehicle which he was driving or operating and in which the said James H. Gilder, Jr., was riding as a passenger to crash into a truck, in violation of the provisions of Section 97-3-47 of the Mississippi Code of 1972, Annotated, as amended; and,
COUNT II
That the aforesaid GEORGE W. MAYFIELD, on or about the 29th day of April, 1989, ... did unlawfully and feloniously, without authority of law, kill and slay a human being, to-wit Jo Ellen Powell, by his culpable negligence when he, the said GEORGE W. MAYFIELD, did cause the motor vehicle which he was driving or operating and in which the said Jo Ellen Powell was riding as a passenger to crash into a truck, in violation of the provisions of Section 97-3-47 of the Mississippi Code of 1972, Annotated, as amended; and all contrary to the form of the statute in such cases made *1124 and provided and against the peace and dignity of the State of Mississippi.
At the close of the trial, the court granted a lesser-included-offense instruction, quoted here in part:
S-14
If you find that the State has failed to prove any one or more of the essential elements of the crime of manslaughter under either Count I or Count II you must find the defendant, GEORGE W. MAYFIELD, not guilty of manslaughter under Count I and Count II, and you will proceed with your deliberations to decide whether the State has proved from the evidence in this beyond a reasonable doubt all the elements of the lesser crime of vehicular homicide under Count I and Count II.
The crime of vehicular homicide as charged in this case is distinguished from the crime of manslaughter by the absence or failure of the State to prove culpable negligence.
Instruction S-14 is based on Miss. Code Ann. § 63-11-30(4) (1988) which states:
Every person who operates any motor vehicle in violation of the provisions of subsection 1 of this Section, and who in a negligent manner causes the death of another ... shall, upon conviction, be guilty of a felony, and shall be committed to the custody of the State Department of Corrections for a period of time not to exceed five (5) years.[2]
The "subsection 1" to which § 63-11-30(4) refers states:
It is unlawful for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor; ... or (c) has ten one-hundredths percent (.10%) or more by weight volume of alcohol in the person's blood.
The jury found Mayfield not guilty of manslaughter by culpable negligence but guilty of two counts of aggravated D.U.I.
According to Mayfield, the crime of aggravated D.U.I. proscribed in § 63-11-30(4) is a crime separate and distinct from the crime of manslaughter by culpable negligence. Mayfield asserts that since the indictment did not assert a charge of aggravated D.U.I., he was denied his fifth amendment right to indictment by grand jury and his sixth amendment right to know the nature of the charges against him.
This Court has often held that a criminal defendant may be convicted of a crime not expressly charged if the crime is logically and necessarily included in whatever crime the indictment sets out. See Hailey v. State, 537 So.2d 411 (Miss. 1988); Grayer v. State, 519 So.2d 438 (Miss. 1988); Cannaday v. State, 455 So.2d 713 (Miss. 1984). Mayfield argues that the crime of aggravated D.U.I. which § 63-11-30(4) describes is not "included" in the crime of manslaughter by culpable negligence since conviction of aggravated D.U.I. requires the State to prove intoxication  an element not included in the offense of manslaughter.
In Craig v. State, 520 So.2d 487, 493 (Miss. 1988), the Court expressly found that the crime of aggravated D.U.I. set out in § 63-11-30(4) is "a lesser included offense necessarily encompassed... under the more serious charge of manslaughter by culpable negligence." The Court has repeatedly reaffirmed that position. See Evans v. State, 562 So.2d 91 (Miss. 1990); Whitehurst v. State, 540 So.2d 1319 (Miss. 1989); Childs v. State, 521 So.2d 882, 883 (Miss. 1988).
Mayfield acknowledges that his argument runs contrary to Craig and its progeny, but he insists that this Court's position is defeated by the United States Supreme Court's holding in Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). In Schmuck, a used-car distributor allegedly purchased used cars, rolled back their odometers, and sold the cars to retail dealers at inflated prices. Upon reselling the cars to customers at *1125 prices reflecting the distributor's fraud, the dealers mailed title application forms to the state transportation department. The distributor was indicted in federal court on twelve counts of mail fraud based on the theory that the dealers' submission of title applications furthered the distributor's fraudulent scheme. The distributor moved under Rule 31(c) of the Federal Rules of Criminal Procedure for a jury instruction on the offense of tampering with a motor vehicle odometer. The trial court denied the motion, and the distributor was convicted on all twelve counts of mail fraud. The distributor appealed, arguing inter alia that the trial court should have instructed the jury concerning the offense of tampering. According to the distributor, tampering was a lesser included offense to the crime of mail fraud since an "inherent relationship" existed between the two acts. The United States Supreme Court rejected the distributor's argument and held that for purposes of Rule 31(c), the crime of tampering with automobile odometers does not constitute a lesser included offense to the crime of mail fraud.
The Court in Schmuck compared the two recognized approaches for identifying a lesser included offense  the "inherent relationship" approach and the "elements" approach  and rejected the former in favor of the latter. In order for one crime to be an lesser included offense to another under the "inherent relationship" approach, the two crimes "must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense." Schmuck, 489 U.S. at 716, 109 S.Ct. at 1450 (quoting United States v. Whitaker, 447 F.2d 314, 319 (D.C. Cir.1971)). Stated differently, "the inherent relationship approach permits a lesser included offense instruction even if the proof of one offense does not invariably require proof of the other as long as the two offenses serve the same legislative goals." Schmuck, 489 U.S. at 717, 109 S.Ct. at 1450. Under the "elements" approach, on the other hand, one crime cannot constitute a lesser included offense to another "unless the elements of the lesser offense are a subset of the elements of the charged offense." Schmuck, 489 U.S. at 716, 109 S.Ct. at 1450.
According to Mayfield, Schmuck establishes the strict "elements" approach as a rule of constitutional dimensions and rejects the "inherent relationship" approach for all purposes. He further contends that the crime of aggravated D.U.I. cannot qualify as a lesser included offense to the crime of manslaughter by culpable negligence because the State is not required to prove intoxication in order to establish manslaughter by culpable negligence.
Both arguments are weak. Mayfield reads Schmuck much too broadly. Schmuck limits its ruling to the context of Fed.R.Crim.Pro. Rule 31(c) and recognizes (without condemnation) that some state courts have employed the "inherent relationship" approach. This Court, therefore, is not bound by the Schmuck ruling.
Clearly, an inherent relationship exists between the crime of aggravated D.U.I. and the crime of manslaughter by culpable negligence. The prohibition of both acts relates to the same interest  protecting lives; the nature of the two crimes is essentially the same  negligent killing.
This Court has never considered itself bound to the objective elements approach. Aside from the several cases which expressly hold that aggravated D.U.I. is a lesser included offense to the crime of manslaughter by culpable negligence, the Court has found in other contexts that a lesser crime may be included in a greater one despite a lack of complete overlap in elements. In Grayer v. State, 519 So.2d 438 (Miss. 1988), we found that assault with intent to rape was a lesser included offense of forcible rape even though, at the time the defendant committed the acts in question, conviction of assault with intent to rape required a finding of previous chaste character on the part of the victim while conviction of forcible rape carried no such requirement. The Court ruled:

*1126 The element of "previous chaste character" contemplated by Section 2361 is not inconsistent with forcible rape under Section 2358. That the jury may find the victim of previous chaste character would in no way preclude a conviction under Section 2358 if the other elements of forcible rape be proven.
Grayer, 519 So.2d at 440. The Court went on to explain:
By way of analogy, we consider heat of passion manslaughter a lesser included offense to the charge of murder, even though that particular form of manslaughter contemplates proof of a fact inconsistent with the principal charge of murder. See Isom v. State, 481 So.2d 820, 824-25 (Miss. 1985). Similarly, negligent homicide while intoxicated, Miss. Code Ann. § 63-11-30 (Supp. 1987) is a lesser included offense to culpable negligence manslaughter, Miss. Code Ann. § 97-3-47 (1972), even though driving while intoxicated is not a necessary element of the latter offense.
Grayer, 519 So.2d at 400 n. 3.
The Grayer rationale is instructive in the instant case. When comparing the elements of aggravated D.U.I. to the elements of manslaughter by culpable negligence, we find that the unmatched element, driving while intoxicated, is "not inconsistent" with the greater offense. In fact, the act of operating a motor vehicle while under the influence of intoxicating liquor is a factor a jury is permitted to consider in determining whether a defendant is guilty of culpable negligence. See Evans, 562 So.2d at 95.
Mayfield is not entitled to prevail on his first assignment of error.

II.

DOES MAYFIELD'S TWO-PART CONVICTION VIOLATE THE STATE AND FEDERAL PROHIBITIONS AGAINST DOUBLE JEOPARDY?
Mayfield argues that § 63-11-30, the provision under which he was convicted, proscribes the act of drunk driving, not the act of killing. The reference to negligent killing in § 63-11-30(4), Mayfield contends, merely points to a circumstance which makes the crime of drunk driving more egregious and subject to greater punishment. The jury convicted Mayfield on two counts of violating § 63-11-30, one for each fatality in the April 29, 1989, accident. This, Mayfield reasons, amounts to double jeopardy since he committed only one act of drunk driving.
The viability of Mayfield's double jeopardy argument turns on whether § 63-11-30(4) is truly a homicide statute or a statute which merely proscribes the act of driving while intoxicated. If § 63-11-30(4) proscribes the crime of negligent killing while driving drunk, then Mayfield's two-count conviction satisfies the constitutional guarantees against double jeopardy. See Burton v. State, 226 Miss. 31, 79 So.2d 242 (Miss. 1955) (where defendant's culpable negligence in operating motor vehicle results in death of multiple persons, each homicide constitutes separate offense for which defendant may be tried without being twice put in jeopardy for same offense). On the other hand, if § 63-11-30(4) merely prescribes punishment for an act of driving while intoxicated in which human life is incidentally extinguished, then Mayfield's argument may have merit. See Barnette v. State, 478 So.2d 800 (Miss. 1985) (double jeopardy clauses of federal and state constitutions proscribe multiple punishments for same offense).
Section 63-11-30(4), as it was worded at the time of Mayfield's wreck, stated:
Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section [i.e., while under the influence of intoxicating liquor] and who in a negligent manner causes the death of another or mutilates, disfigures, permanently disables or destroys the tongue, eye, lip, nose or any other limb or member of another shall, upon conviction, be guilty of a felony and shall be committed to the custody of the State Department of Corrections for a period of time not to exceed five (5) years.
*1127 As the State suggests, the foregoing can be read as a homicide statute under which each death constitutes a separate and distinct violation. It is noteworthy that the statute speaks in the singular ("death of another"). If the legislature had intended to merely criminalize drunk driving which results in one or more fatalities, it could have so specified.
On the other hand, there are several factors which commend Mayfield's reading of the statute. Section 63-11-30 is styled "Penalties for operation of vehicle while under influence of intoxicating liquor or other substance that impairs ability to operate vehicle; where violation causes injury or death to another person." The emphasis is clearly on drunk driving, not the effect on "another person." Further, the term "violation" refers to the act of driving while under the influence of intoxicants. The phrase "where violation causes injury or death" suggests that "injury or death" constitutes an exacerbating circumstance, not a separate and independent crime. Section 64-11-30(4) appears to emphasize the act of drunk driving over and above the act of killing since the drunk driving clause precedes the "death or injury" clause. If the legislature had intended to designate the causing of "death or injury" as a separate crime, the statute might better have been phrased: "Every person who in a negligent manner causes the death of another ... while operating any motor vehicle in violation of the provisions of subsection (1) of this section shall be guilty of a felony... ." Lastly, it is curious that § 63-11-30(4) prescribes the same punishment regardless of whether the victim suffers death or a relatively minor injury. A person who drives drunk and negligently causes the mutilation or disfigurement of a victim's "tongue, eye, lip, nose or any other limb or member" (including, one may presume, a pinkie or earlobe) is subject to five years imprisonment just as if the victim had died. This lumping together of death and injury indicates a legislative intent to treat such incidents as collateral to the principal offense of drunk driving. If so, then Mayfield is correct in arguing that he violated § 63-11-30(4) only once on the occasion of the fatal crash.
One thing is certain: Section 63-11-30(4) is ambiguous with regard to whether it proscribes the act of killing while driving drunk (an act Mayfield committed twice) or whether it merely prescribes a penalty for the act of driving drunk where death results (an act Mayfield committed only once). Dealing with a similar situation, the United States Supreme Court adopted a policy of "lenity" under which the less onerous interpretation prevails. In Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), the defendant was convicted on two counts of violating a federal statute which prohibited assault on a federal officer. The proof showed that the defendant had fired his weapon only once, but that the bullet had struck two officers. On appeal, the United States Supreme Court found that the statute was "ambiguous" concerning whether a single act which affected two officers constituted one offense or two. The Court held that the defendant had committed only one offense and reasoned:
It is apparent that § 254 [the statute under which the defendant was convicted] may as reasonably be read to mean that the single discharge of the shotgun would constitute an "assault" without regard to the number of federal officers affected, as it may be read to mean that as may "assaults" would be committed as there were officers affected. Neither the wording of the statute nor its legislative history points clearly to either meaning. In that circumstance the Court applies a policy of lenity and adopts the less harsh meaning. "[w]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication." [Citations omitted].... "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." [Citations *1128 omitted]... . This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.
Ladner, 358 U.S. at 177-78, 79 S.Ct. at 214.
The policy of "lenity" set out in Ladner is a rule of construction which the Court expressly limited to federal statutes. Therefore, it does not control our interpretation of § 63-11-30. This Court has, however, adopted a similar policy in analogous contexts. See Johnson v. State, 260 So.2d 436, 438-39 (Miss. 1972) (where facts which constitute criminal offense fall under either of two statutes, or where there is doubt as to which statute should apply, statute prescribing lesser penalty will govern); accord Burns v. State, 438 So.2d 1347, 1353 (Miss. 1983); Grillis v. State, 196 Miss. 576, 17 So.2d 525 (1954).
In our view, it is fairly clear that § 63-11-30 proscribes the act of drunk driving, not the act of killing. Consequently, Mayfield's second conviction constitutes double jeopardy and must be reversed. Since the statute is hopelessly ambiguous, we further hold that under Johnson the interpretation which affords the lesser penalty must prevail.

III.

IS THE MANSLAUGHTER STATUTE UNDER WHICH MAYFIELD WAS CHARGED UNCONSTITUTIONALLY VAGUE?
Mayfield contends that Miss. Code Ann. § 97-3-47 (1972), the manslaughter statute under which he was charged, is unconstitutionally vague since it, in his words, "contains no ascertainable standards from which an objective determination can be made as to whether one's activities constitute `culpable negligence.'" This assignment of error is specious. First, this Court has traced the parameters of the term "culpable negligence" again and again during the twenty years since the legislature enacted § 97-3-47. Mayfield will not be heard to argue that he had no notice of what culpable negligence entails.
Mayfield further contends that even if the statute itself is constitutional, his conviction must be overturned since the jury was not instructed concerning what specific acts would constitute culpable negligence. If Mayfield had been convicted of manslaughter by culpable negligence, then his argument might have some persuasive force. In the instant case, however, Mayfield was acquitted on the two manslaughter charges. The issue of whether the jury instructions concerning manslaughter by culpable negligence are impermissibly vague is therefore moot.

IV.

DID THE TRIAL COURT ERR IN REFUSING TO CONTINUE MAYFIELD'S PRELIMINARY HEARING SO THAT HE MIGHT SUBPOENA WITNESSES?
On February 16, 1990, seven months after he was indicted, Mayfield filed a motion for a preliminary hearing. On February 16, 1990, the trial court granted the motion and announced that it would proceed with the hearing immediately. Mayfield objected, arguing that he should be afforded an opportunity to subpoena witnesses. The trial court overruled Mayfield's objection and proceeded with the hearing. On appeal, Mayfield argues that since he was unable to present witnesses, he was effectively denied his right to a preliminary hearing.
The threshold question, of course, is whether Mayfield was entitled to a preliminary hearing at all since he had already been indicted by a grand jury. In Avery v. State, 555 So.2d 1039 (Miss. 1990), we held that a criminal defendant is entitled to a preliminary hearing even where a grand jury has already established the existence of probable cause to charge. The Court was not unanimous in this conclusion, however, see Avery, 555 So.2d at 1046 (Roy Noble Lee, C.J., dissenting in part), and in Robinson v. State, 585 So.2d 735 (Miss. 1991) (McRae, J. specially concurring), a *1129 four-member minority was inclined to overrule Avery. The minority reasoned that a preliminary hearing is "simply a course of procedure whereby a possible abuse of power may be prevented, and the accused discharged or held to answer, as the facts warrant." Robinson, 585 So.2d at 738. In Hansen v. State, 592 So.2d 114 (Miss. 1991), four justices joined Chief Justice Roy Noble Lee in a concurring opinion which stated: "A preliminary hearing, after indictment, is simply not the method for obtaining discovery, information and evidence in a criminal case... . I would overrule Avery insofar as it held to the contrary." Hansen, 592 So.2d at 155 (Roy Noble Lee, C.J., joined by Hawkins, P.J., Pittman, Banks, and McRae, JJ.). Since the Chief Justice's concurring opinion in Hansen commanded a majority of the Court, it effectively announced the death of Avery.
Apparently unwilling to accept its own demise, Avery has continued to haunt our opinions. See Rogers v. State, 599 So.2d 930, 935 (Miss. 1992). Today, we officially lay its restless soul to rest. We hold that the fundamental purpose of a preliminary hearing is to "determine whether there is probable cause to believe that an offense has been committed and whether the defendant committed it." Avery, 555 So.2d at 1046 (Roy Noble Lee, C.J., dissenting in part). The procedure is designed, for example, to prevent a victim of malicious prosecution from enduring extended incarceration or the distress of unjust accusations while waiting for his case to come before a grand jury. Once a grand jury has convened and found that probable cause exists, there is no further need for a preliminary hearing. Even if held, it would no longer be "preliminary." Rule 1.07 clearly envisions a proceeding that is "preliminary" to grand jury proceedings. The rule states that if the hearing reveals that probable cause exists, "the judicial officer shall bind the defendant over to the next grand jury."
It is true, as the majority opinion in Avery points out, that the accused is permitted to confront and cross-examine his accusers and to discover evidence during the course of a preliminary hearing. We are of the opinion, however, that these functions are merely incidental and wholly subordinate to the true purpose of a preliminary hearing: determining whether probable cause exists. Once a defendant is indicted by a grand jury, that purpose is fulfilled and the whole issue of a preliminary hearing and all privileges which attach thereto becomes moot. Just because the rule permits the defendant to cross-examine his accusers during the course of a preliminary hearing does not mean that the right to conduct such an examination (or to obtain a preliminary hearing in the first place) can never expire.
We hold that once a defendant has been indicted by a grand jury, the right to a preliminary hearing is deemed waived. Although Rule 1.07 states that a preliminary hearing cannot be waived except "in writing or in open court and upon the advice of counsel," Rule 1.04 implicitly limits this waiver restriction to the period prior to indictment: "The preliminary hearing shall be heard on the set date, unless it is waived in writing or in open court and upon the advice of counsel. If preliminary hearing is waived by the defendant, the judicial officer shall bind the defendant over to the next grand jury."
George Mayfield had already been indicted when the trial court granted his motion to conduct a preliminary hearing. He cannot complain on appeal concerning inadequacies in the hearing because, as an indictee, the mere grant of a hearing gave him more than the law requires.

V.

DID THE LEGISLATURE INTEND ONE WHO KILLS ANOTHER THROUGH DRUNK DRIVING TO BE CHARGED WITH THE GREATER OFFENSE OF MANSLAUGHTER, AND IF NOT, DID THE TRIAL COURT ERR IN REFUSING TO DISMISS MAYFIELD'S MANSLAUGHTER INDICTMENT?
Miss. Code Ann. § 97-3-47 (1972), the provision under which Mayfield was charged, provides:

*1130 Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.
Miss. Code Ann. § 63-11-30(4) (1988), of course, as quoted previously, prescribes a penalty for those who drive while intoxicated and who negligently cause, inter alia, the death of another. According to Mayfield, § 63-11-30(4) takes deaths caused by drunk driving out from under § 97-3-47. Pursuing this line of reasoning, Mayfield concludes since his indictment charged him with violating § 97-3-47, the indictment was invalid and should have been dismissed.
Mayfield's argument does not hold water. First, it cannot be reasonably reconciled with the argument he made regarding double jeopardy under Issue II, supra. There he argued that § 63-11-30(4) was a drunk driving statute, not a homicide statute, and that, consequently, he could only be charged for one act of drunk driving regardless of how many people died because of it. He is now arguing that the act of negligently killing someone while driving drunk is not homicide under § 97-3-47, either. He cannot have it both ways. Viewing the two competing arguments together, Mayfield is saying in effect that killing someone while driving drunk is not proscribed as homicide in Mississippi. Mayfield's argument that multiple deaths do not constitute separate offenses under § 63-11-30(4) is correct. (See Issue II, supra). If a defendant cannot be charged at all under § 97-3-47 for such deaths, then the legislature has created what the State refers to in its brief as a "blue light special" on killings which result from drunk driving. Even if a drunk driver killed multiple persons through the most egregious and culpable negligence, he could under no circumstance be charged with more than one crime. The legislature surely did not intend such a result.
Secondly, § 97-3-47 is expressly a catch-all statute for "every other killing ... not provided for in this title." Section 63-11-30(4) is not contained in Title 97, and negligent killing through drunk driving is not otherwise provided for in Title 97.
The assignment of error is without merit.

CONCLUSION
A close reading of § 63-11-30 indicates that it proscribes the act of drunk driving rather than negligent killing. Subsection 4 merely imposes a harsher penalty when the act of drunk driving results in harm or death to another person. Since Mayfield is charged with only one act of drunk driving, his dual indictment subjected him to double jeopardy and requires reversal of the second conviction. We affirm Mayfield's first conviction, having found no merit in his remaining assignments of error.
CONVICTION ON COUNT I FOR VEHICULAR HOMICIDE AND SENTENCE OF FIVE (5) YEARS IN CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED; CONVICTION ON COUNT II REVERSED AND REMANDED FOR RESENTENCING.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.J., and PRATHER, and SULLIVAN, JJ., concur.
BANKS, J., concurs in part and dissents in part with separate written opinion, joined by PITTMAN, J.
ROBERTS, J., concurs in parts I, III, IV, and V, but dissents as to part II.
BANKS, Justice, concurring in part, dissenting in part:
I am compelled to write separately to express my disagreement with part II of the majority opinion. The majority concludes that Mississippi Code Annotated § 63-11-30(4) (Supp. 1992) proscribes drunk driving with added punishment where an injury occurs, as opposed to proscribing negligently operating a vehicle and causing injury while in violation of our drunk driving statutes. Because I believe that the latter interpretation is correct, and that it follows that a separate crime is committed for each person who is injured, I dissent as to that portion of the majority ruling which *1131 reverses and renders as to the second count.
The majority relies heavily on the fact that Miss. Code Ann. § 63-11-30 is essentially a statute prescribing punishment for drunk driving, and that the legislative act here involved was codified as § 63-11-30(4). What the majority overlooks is that the codification was an act of the codifiers, not the legislature. There was no explicit legislative direction to the codifiers with respect to the act here in question. It could just as well have been codified in those sections of the code proscribing crimes against persons. See, Ch. 466 General Laws, 1983, Section 13.
The phrase quoted by the majority "where violation causes injury or death" does not appear in the statute, but rather appears only in the title, which is, again, the work of the codifiers, not the legislature. Id.; Miss. Code Ann. § 63-11-30(4). Finally, a review of the act as passed reveals that rather than refer to a violation of "the provisions of subsection 1 of this section" as it appears codified, the act refers to "subsection 1 of Section 63-11-30" evincing no legislative intent that the act in question be codified as a part of that section. Obviously, had the legislature intended to codify the section as done by the codifiers, it could have simply done so in the act by passing the section as an amendment to § 63-11-30. That statute was brought forth and amended in Section 7 of the very same act. Ch. 466, General Laws, 1983, Section 7.
Section 13 of the act stood alone, separate from all other amendments to the drunk driving scheme and from other new sections which were explicitly to be codified in Title 63 Chapter 11 of the Code. Compare, e.g., Ch. 466, General Laws, 1983 Section 11 (It is the intent of the Legislature that the following be codified as Section 63-11-40 Mississippi Code of 1972.") A review of the circumstances of its passage would reveal that this statute was a response to difficulty in securing manslaughter convictions in these circumstances, as well as, the total absence of a penalty where the injury sustained did not result in death. Leaving aside its erroneous codification, the statute is no more ambiguous than any other statute proscribing acts of violence perpetrated on citizens. I would affirm.
PITTMAN, J., joins this opinion.
NOTES
[1] Both parties and the court below refer to the crime proscribed in Miss. Code Ann. § 63-11-23(4) as "vehicular homicide." Under Issue II, infra, we conclude that § 63-11-23(4) does not qualify as a "homicide" statute. For sake of clarify, therefore, we shall refer to the subject crime as "aggravated D.U.I."
[2] The maximum penalty has subsequently been raised to twenty-five (25) years. See Miss. Code Ann. § 63-11-30 (Supp. 1992).