353 So.2d 1364 (1978)
Marvin MYERS, Jr.
v.
STATE of Mississippi.
No. 49848.
Supreme Court of Mississippi.
January 11, 1978.
Dodson, Kelly & Butts, Robert J. Kelly, Oxford, for appellant.
A.F. Summer, Atty. Gen., by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SUGG, WALKER and BROOM, JJ.
SUGG, Justice, for the Court:
This is the third appeal by defendant. His first conviction was reversed because a motion by defendant's court-appointed counsel to withdraw was heard out of defendant's presence. Myers v. State, 254 So.2d 891 (Miss. 1971). Defendant's second conviction was reversed because he was effectively denied the right to counsel of his choice and because his motion to instruct the jury to disregard the testimony of a witness was overruled. Myers v. State, 296 So.2d 695 (Miss. 1974).
Defendant assigns as error that he was denied counsel of his choice in his third trial. With this we concur and reverse for a new trial.
*1365 On April 7, 1975, the first day of the third trial, defendant made the following motion before the jury was empanelled:
COUNSEL FOR THE DEFENDANT (Mr. Kelly): Your Honor, on behalf of the Defendant, Marvin Myers, I move the Court to permit John B. Farese, Sr. and any other member of his firm that may be helpful to him to represent the defendant in this charge of murder of Larry Cox, the reasons being that at the first trial Mr. Myers was represented by the Wilroy & Hagan Firm from Hernando. After the conviction by the jury and sentence of the Court, apparently a group of citizens from DeSoto County, Mississippi, hired John B. Farese and his law firm to represent Marvin Myers on appeal to the Mississippi Supreme Court. The Farese firm did represent Mr. Myers on that appeal and were successful in having the sentence and conviction reversed and returned to this court for trial. John B. Farese and his son, as I understand it, both represented Mr. Myers in the Supreme Court at that time. Prior to the second trial, Mr. Myers moved this Court by me to reinstate John B. Farese as his counsel in this case. At that trial the Court permitted John B. Farese to represent Marvin Myers but excluded John Boothe Farese, the son, from representing Marvin Myers, because John Boothe Farese was then the County Prosecuting Attorney for Benton County, which is not a part of the Seventeenth Judicial District.
Mr. Myers was again convicted and sentenced at the second trial, and I represented him on appeal to the Mississippi Supreme Court. The Supreme Court once again reversed the conviction and sentence and remanded the case to this court for another trial. We are now ready to proceed on the third trial of this case. Prior to this trial, the Court through its own inquiry through the office of the District Attorney, Gerald Chatham, and myself inquired of the Farese Law Firm to determine their willingness and ability to represent Marvin Myers in this case. There has also been contact between the Farese Law Firm and Marvin Myers relating to this case.
In support of Mr. Myers' motion, I would submit a letter dated July 10, 1974, from John B. Farese to Marvin Myers, Jr. In that letter Mr. Farese indicates that he would be willing to participate in the trial of this case. Pursuant to the direction of the Court, on November 26, 1974, I wrote to John B. Farese, and I stated to him that I was writing at the Court's direction advising him that I would be appointed to represent Marvin Myers unless an eligible member of his firm announces to the Court that he or she would be Marvin Myers' attorney; that an eligible member of that firm would be anyone other than John B. Farese. I would submit a copy of that letter in support of the motion.
On November 27, 1974, Mr. Farese wrote a letter to the Court stating that he had been contacted by me by telephone and by letter. He claims that because of his trial schedule that it would be impossible for him to try this case without the services of his son, John Booth Farese. He further states, that at the time his firm represented Marvin Myers, John Booth Farese was not the County Prosecuting Attorney of Benton or any other county. John Booth Farese had not been elected to office and he had done a great deal of preparation in the case. Mr. Farese seemed to feel that under the cannons of ethics that John Booth Farese was morally and legally bound to complete his representation of Marvin Myers. I submit a copy of that letter in support of the motion.
On January 7, 1975, I received a letter from Mr. Chatham, the District Attorney, advising me that I was the legal representative of Marvin Myers at this trial; that Mr. Chatham had discussed the matter with the Court and that John Booth Farese is officially barred from participating in the representation of Marvin Myers due to the affirmation of the Supreme Court. I submit that letter as an Exhibit to the Motion.

*1366 Your Honor, those are all the letter documentations that I would submit at this time. In fairness to the State and the Court, I do have a copy of the letter dated December 4, 1974, from the Court to A.F. Summer, Attorney General, which, if the Court wishes, I could include, but I do not have the response of the Attorney General.
Defendant testified in support of his motion that he wanted John B. Farese and his law firm to represent him and that Mr. Farese (Sr.) had agreed to represent him. Various letters were offered as exhibits to the motion. Exhibit I was a letter dated July 10, 1974 signed by John B. Farese directed to defendant in which he stated that he would be happy to have Robert J. Kelly assist in the retrial of the case and that he and Mr. Kelly would visit defendant, who was in the Mississippi State Penitentiary at Parchman, to see about an early setting for retrial. On November 26, 1974, J. Kelly wrote John B. Farese that Kelly would be appointed to represent Myers unless an eligible member of the Farese firm announced to the court in writing that he would represent Myers. He further stated that an eligible member of the firm would be any member of the firm other than John Booth Farese, who was County Prosecuting Attorney of Benton County. In response thereto John B. Farese wrote the following letter dated November 27, 1974 to the circuit judge:
As you probably know, I received a telephone call from Gerald Chatham regarding this case. I also received a letter, dated November 26th, from Robert J. Kelly, a copy of which is enclosed so there will be no question about what he has told me.
Because of the tremendous trial schedule which I have facing me for the next six or eight months, it will be virtually impossible for me to try this case without the services of my son, John Booth Farese. I must respectfully disagree with Your Honor, when you say that any member of my firm, other than my son, John Booth Farese, can participate in this trial. My reason for objecting is as follows:
At the time we represented Marvin Myers, my son, John Booth Farese, was not the county prosecuting attorney of Benton or any other county. He had not been elected to office and he had done a great deal of the preparation in this case. I feel that, under our Canons of Ethics, John Booth Farese is morally and legally bound to complete his representation of Marvin Myers, in spite of the fact that he is now the prosecuting attorney of Benton County. I feel that preventing my son from participating in this case with me would be denying Marvin Myers his constitutional right to choice of counsel.
Accordingly, if the Court refuses to allow my son to participate in the trial of this case with me, I will not be able to represent Marvin Myers. I might add, for the Court's further information, that we have not been paid by anyone for the pending trial, although we had been assured at the last trial that we would be paid.
As Your Honor knows, from reading the newspapers, I have been involved in several time-consuming cases, among which has been the Garrison case. This case has taken me out of the office for days at a time; and, at my age, sixteen hours a day is too much to work.
I shall await the Court's final decision in this matter; but, so there will be no misunderstanding, in the event the Court sees fit to exclude John Booth Farese from participating in the trial of this case with me, there is no way I can defend Marvin Myers. Our firm is so set up that the major part of the trial work is done by my son and me. Of course, Anthony Farese and Peggy Jones do trial work but, as stated above, the major part is done by my son and me.
With all kind personal wishes and hopes you will have a happy Thanksgiving, I remain
 Sincerely,
 JOHN B. FARESE
On January 7, 1975 the district attorney wrote Robert J. Kelly the following letter:

*1367 This letter is to confirm the legal representation of the above Marvin Myers by you for his up coming trial for murder.
I have discussed the matter with Judge Thomas and he has advised that John Booth Farese is officially barred from participating in the representation of Myers due to the affirmation of the law by the Supreme Court. Mr. Farese, Sr. advised that he is unable to participate without the assistance of his son, John Booth Farese, Jr. and Judge Thomas therefore interprets this as a denial by the Farese Firm to participate in the defense of Marvin Myers.
I am writing you this letter for your information where we will have something for the file and I am also forwarding copies to the appropriate parties.
I send to you my very best regards.
 Very sincerely, your friend,
 Gerald W. Chatham
When the motion was made by defendant neither the judge, the district attorney, nor Robert J. Kelly knew that House Bill No. 746 General Laws of Mississippi (1975) was passed by the legislature on April 5, 1975 and approved by the Governor on April 7, 1975.[1]
Mr. Farese made it clear in his letter of November 27, 1974 that he would represent Marvin Myers in the trial of his case if his son, John Booth Farese, would be permitted to participate. The letter is an unqualified offer of the Farese firm to represent the defendant, the defendant desired that the Farese firm represent him, and because the impediment against John Booth Farese participating in the trial was removed by the statute which became effective on the date of the trial, we hold that defendant was entitled to be represented by the Farese firm. We hold that the Farese firm is now counsel of record for the defendant and he is not entitled to have the court appoint another attorney to assist this firm in his fourth trial.
It is unfortunate that the bill was passed, approved, and put into effect so that neither the court nor counsel were aware of the passage of the bill. This points up the fact that the legislature should not change existing judicial procedures by making acts of the legislature effective immediately, but should provide that such acts take effect at a future time so that courts and attorneys might have time to learn of statutory procedural changes.
Because this case is being remanded for retrial, we deem it necessary to consider the following assignment of error:
The Court erred in selecting jurors from all of Panola County. The Court was without jurisdiction and authority to select jurors from the second judicial district of Panola County. Therefore, the verdict returned by the jury was void.
Defendant's motion for a change of venue was granted, and the trial was moved from DeSoto County to the First Judicial District of Panola County. Panola County was established in January, 1836 by Mississippi General Laws of 1836, page 12, and was divided into two judicial districts on January 31, 1880 by Chapter 25 Mississippi General Laws of 1880. Section 6 of the latter act provides:
Sec. 6. Be it further enacted, That the laws in relation to the selection and liabilities of services of jurors shall be applicable to each district in the same manner as if each district was a separate county so far as the same may apply, and no person shall be required to serve as a grand or *1368 petit juror except in the district in which he resides, and the grand and petit jurors shall be selected in each district in the same manner as if the same was a county.
Defendant argues that, under our decisions, each district within a county is treated as if it were a separate county for jurisdictional purposes. Rogers v. State, 266 So.2d 10 (Miss. 1972); Passons v. State, 208 Miss. 545, 45 So.2d 131 (1950). We agree with defendant's contention that each judicial district within a two district county is to be treated as if each district were a separate county for jurisdictional purposes. However, this argument overlooks section 13-5-21 Mississippi Code Annotated (Supp. 1977) which provides as follows:
In counties where there are two (2) circuit court districts, the jury commission shall make a list of jurors for each district in the manner directed for a county, and the same shall be treated in all respects as for an entire county. In such counties a juror shall not be required to serve out of his district, except should the court, in its discretion, otherwise direct, and except when drawn on a special venire. In either of such excepted cases, the jury shall be drawn from the two (2) jury boxes if the court so direct, one (1) name for each alternately.
The above first appears as Section 755 Mississippi Code of 1871 and authorizes a trial court to summon a special venire from both districts within a county when the county contains more than one judicial district. In Burt v. State, 86 Miss. 280, 38 So. 233 (1905) we held this section applied to Perry County notwithstanding the provisions of Chapter 116 Mississippi General Laws of 1892 which divided Perry County into two judicial districts and also provided that no person would be liable for jury service outside the district in which he lives.
We held in Ferguson v. State, 107 Miss. 559, 65 So. 584 (1914) that, in a county having two circuit court districts, the venire may be drawn from both districts of the county, but where one jury box is exhausted it is not reversible error for the trial court to draw all names from the other district.
In Taylor v. State, 148 Miss. 621, 114 So. 390 (1927), we held:
It is manifest that this section simply permits the circuit court, in its discretion, to summon a special venire from the body of the county, and there is nothing in the language to indicate that it is mandatory that the special venire be drawn from the entire county, but the language `if the court so direct' lodges the discretion entirely within the province of the trial court, and a juror is not required to serve out of his district unless the circuit court in its discretion should otherwise order. (148 Miss. at 626, 114 So. at 391).
Section 13-5-21 Mississippi Code Annotated (Supp. 1977) specifically authorizes the trial court to require a juror to serve out of his district, (1) in its discretion and, (2) when such juror is drawn on a special venire. In a county having two judicial districts, the special venire may be drawn from both districts of the county, in the discretion of the trial judge. We therefore hold that the special venire was properly drawn from both districts of Panola County.
Defendant also argues that his Sixth Amendment rights were violated. We do not agree for several reasons. First, defendant had the venue changed from the county where the crime was committed and thereby prevented the state from trying his case in the county where the crime was committed. Second, the Sixth Amendment requirement that a defendant must be tried in a district, "which district shall have been previously ascertained by law" was met because Panola County was created in 1836, divided into two judicial districts in 1880 and the boundaries of the districts were fixed by law. Third, section 13-5-21 Mississippi Code Annotated (Supp. 1977) authorizing the circuit court to draw a special venire from both judicial districts of a county meets the vicinage requirements of the Sixth Amendment. Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); Maryland v. Brown, 295 F. Supp. 63 *1369 (D.C.Md. 1969); People v. Jones, 9 Cal.3d 546, 108 Cal. Rptr. 345, 510 P.2d 705 (1973). We therefore hold that selection of jurors from both judicial districts of Panola County meets the requirements of the Sixth Amendment and did not deny defendant due process guaranteed by the Fourteenth Amendment.
Defendant also contends that the court erred by permitting Miles Fowler to testify as a rebuttal witness. The testimony of Fowler was a proper subject of rebuttal and it was within the sound discretion of the court to allow the testimony. Roney v. State, 167 Miss. 827, 150 So. 774 (1933). The admission in rebuttal testimony rests largely in the discretion of the trial court, and does not constitute reversible error, unless it is shown that no opportunity is afforded the defendant to reply by surrebuttal testimony. Gant v. State, 219 Miss. 800, 70 So.2d 28 (1954).
Defendant also argues that the testimony of Fowler with reference to the tracking by bloodhounds was inadmissible because the state failed to lay a proper predicate by proving that the bloodhounds were pure blood, properly trained and reliable. Hinton v. State, 175 Miss. 308, 166 So. 762 (1936); Fisher v. State, 150 Miss. 206, 116 So. 746 (1928); Harris v. State, 143 Miss. 102, 108 So. 446 (1926); Spears v. State, 92 Miss. 613, 46 So. 166, 16 L.R.A. (N.S.) 285 (1908). No preliminary proof was offered that the bloodhounds were of pure blood, had been well trained to track human beings, had been well tested by tracking other men and found reliable. However, defendant did not make a contemporaneous objection. The rule is well established that a contemporaneous objection is necessary to preserve the right to raise an error on appeal. Ratliff v. State, 313 So.2d 386 (Miss. 1975); Pittman v. State, 297 So.2d 888 (Miss. 1974). In Blackwell v. State, 44 So.2d 409 (Miss. 1950), this Court stated:
It is now well settled that when anything transpires during the trial that would tend to prejudice the rights of defendant, he cannot wait and take his chances with the jury on a favorable verdict and then obtain a reversal of the cause in this Court because of such error, but he must ask the trial court for a mistrial upon the happening of such occurrence when the same is of such nature as would entitle him to a mistrial. (44 So.2d at 410).
REVERSED AND REMANDED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, WALKER, BROOM, LEE and BOWLING, JJ., concur.
NOTES
[1] Section 1. Section 19-23-13, Mississippi Code of 1972, is amended as follows:

19-23-13. The county prosecuting attorney shall not represent or defend any person in any criminal prosecution in the name of the state, county or municipality of the county, nor shall he give any advice against the state, his county or in a criminal case against a municipality of his county, and shall not represent any person in any case against the state, his county, or in a criminal case arising in a municipal court of his county. Nothing herein shall prohibit any county prosecuting attorney from defending any person in any criminal prosecution in any county not within the circuit court district of such county prosecuting attorney.
Section 2. This act shall take effect and be in force from and after its passage.