# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-02080-SCT

*MARVIN DEWAYNE GATHINGS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/1999 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS C. LEVIDIOTIS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY | JIM HOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/02/2002 |
| MOTION FOR REHEARING FILED: | 5/15/2002; denied 8/1/2002 |
| MANDATE ISSUED: | 8/8/2002 |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1. On July 26, 1999, Marvin Dewayne Gathings (Gathings) was tried for robbery and convicted by a jury in the Circuit Court of the Second Judicial District of Chickasaw County, Honorable R. Kenneth Coleman presiding. Gathings was subsequently sentenced by the trial court to a term of 15 years in the custody of the Mississippi Department of Corrections. Post-trial motions were filed, and an order denying post-trial motions was entered on December 11, 2000. Gathings now appeals his conviction and sentence to this Court.

## FACTS

¶2. On April 29, 1998, the night manager of the Okolona Sonic restaurant was making his usual night deposit at a local bank. Gathings was convicted of robbing the night manager while an accomplice of Gathings looked on. Testimony at trial consisted of an in-court identification by the victim of Gathings, testimony by Gathings's co-defendant which indicated that Gathings had hatched a scheme to rob the Sonic manager as he made a night deposit, and testimony by two officers that incriminating statements were made by Gathings during questioning at the police department.

¶3. Gathings and his co-defendant were indicted for robbery in this cause in September, 1998. On May 21, 1999, prior to Gathings's July, 1999 trial date, the State filed a motion to permit the drawing of a jury from both judicial districts of Chickasaw County. This motion was filed ex parte, and included a unified request

for all cases tried in the Second Judicial District of Chickasaw County in the July and October 1999 terms of court. On May 27, 1999, Honorable Henry L. Lackey, the other circuit court judge in the Third Circuit Court District, signed an order granting the State's motion to draw a jury from both judicial districts in the July and October terms of court.

¶4. Gathings's trial was within the July and October time frame in which juries were to be selected from both judicial districts. After voir dire, Gathings presented a motion to quash the jury venire on grounds that it was improper to draw the jury from both the First and Second Judicial Districts. Gathings also argued that a copy of this motion to draw jurors from both judicial districts should have been provided to him so as to give him proper notice and adequate time for a hearing to argue against the State's motion. The State's motion had indeed been granted ex parte.

¶5. The State responded to Gathings's motion to quash by first offering to file its previously filed motion before the trial court. The State argued that the trial court was already aware of the motion and its contents, but that the purpose of the motion was to overcome the risk of not having an impartial jury due to the small geographic area of the Second Judicial District. The State also argued that most people in the Second District knew each other and they had some working relationship or kinship with the defendant or victim. The State further argued that they have had difficulty in previous cases and in some instances it was necessary to "go out on the street" to get jurors. The trial court then denied Gathings's motion to quash the jury venire.

¶6. After the peremptory challenges, Gathings renewed his motion to quash the jury venire based upon choosing the jurors from two separate districts. He then incorporated a *Batson* challenge based upon the jury selection, arguing that the trial jury was composed of only three African-American males, one African-American female, and one African-American female alternate, and that did not accurately reflect the proportion of African-Americans to Caucasians representative of the Second Judicial District. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State responded that Gathings's motion was untimely and should be overruled. The trial court was of the opinion that Gathings's *Batson* challenge was waived and that no prima facie showing or proof of any kind was made to show that the State used its challenges in a way to exclude African-Americans. Also, the trial court stated that, in its observation, no strikes were used to exclude any particular race of jurors.

¶7. Gathings, in raising the following issues, requests this Court to reverse and render his conviction and sentence, or alternatively, to reverse his conviction and sentence and remand this case to the trial court for a new trial.

**I. DID THE TRIAL COURT ERR WHEN IT OVERRULED GATHINGS'S MOTION TO QUASH THE JURY VENIRE BASED UPON THE STATE'S FAILURE TO PROPERLY FILE AND NOTICE ITS MOTION TO DRAW FROM BOTH THE FIRST AND SECOND JUDICIAL DISTRICTS?**

**II. DID THE GRANTING OF THE STATE'S MOTION TO DRAW THE JURY FROM BOTH JUDICIAL DISTRICTS IMPERMISSIBLY ALTER THE RACIAL MAKEUP OF THE VENIRE?**

## DISCUSSION

**I. DID THE TRIAL COURT ERR WHEN IT OVERRULED GATHINGS'S MOTION TO QUASH THE JURY VENIRE BASED UPON THE STATE'S FAILURE TO PROPERLY FILE AND NOTICE ITS MOTION TO DRAW FROM BOTH THE FIRST AND SECOND JUDICIAL DISTRICTS?**

¶8. Gathings argues that he should have been afforded notice and an opportunity for a hearing regarding the State's motion to draw the jury from both the First and Second Judicial Districts of Chickasaw County. Also, Gathings argues that this failure by the State to give him notice of the State's motion deprived him of his Fifth Amendment right to due process of law. According to Gathings, the failure to serve a copy of the motion on him and the State's failure to submit a certificate of service constitute violations of the *Mississippi Uniform Rules of Circuit and County Court Practice*, which also makes reference to the *Mississippi Rules of Civil Procedure*. *See* URCCC 2.06; Miss. R. Civ. P. 5(b). Gathings argues that the effect of these violations resulted in a tainted jury; and therefore, he was denied a fair trial.

¶9. On the other hand, the State argues that Gathings was afforded due process of law. The State points out that it filed its motion to draw jury members from both judicial districts on two occasions. First, the State filed the motion on May 21, 1999, for all cases tried in the July and October terms of court. Secondly, the State refiled the motion specifically in Gathings's case on the day of trial. The State also argues that Gathings was given a hearing on his ore tenus motion to quash the jury venire before the trial started.

¶10. The State points out that Gathings indicated that he was familiar with the State's earlier motion based on his counsel's statements when he argued his motion to quash the jury venire. The State suggests that these statements show that Gathings at least had constructive notice or knowledge of the State's motion. The portion of the record that reflects Gathings's trial counsel's awareness of the earlier motion and subsequent order by the trial court is as follows:

> It is not like cases in the past that Mr. Hood mentioned in an argument in a case prior yesterday wherein he stated a jury had been drawn before. It was very difficult. This is the first time this case has appeared. Secondly, we don't have a copy of any order whereby the Court has ordered that this be done. I was made aware at a prior hearing that one existed. The only order we have, where we were again in the last term, speaks to a different term of January...

¶11. Without question, circuit judges holding court in counties with two judicial districts have authority, in certain instances, to draw the jury panel from both judicial districts of the county. Miss. Code Ann. § 13-5-21 (Supp. 2001) states:

> In counties where there are two (2) circuit court districts, the jury commission shall make a list of jurors for each district in the manner directed for a county, and the same shall be treated in all respects as for an entire county. In such counties a juror shall not be required to serve out of his district, except should the court, in its discretion, otherwise direct, and except when drawn on a special venire. In either of such excepted cases, the jury shall be drawn from the two (2) jury boxes if the court so direct, one (1) name for each alternately.

¶12. At the July, 1999 term of court in the Second Judicial District of Chickasaw County, Judge Coleman called Gathings's case up for trial. Even though Gathings's counsel had at least some pre-trial knowledge of the order, he made no objection to the entry of Judge Lackey's order prior to the case being called up for

trial. It was only after voir dire that Gathings, through counsel, presented a motion to quash the jury venire on the grounds that it was not proper to draw the jury venire from both the first and second judicial districts of the county even though Gathings's counsel admitted to having prior knowledge of the trial court's order to draw the jury venire from both judicial districts of the county.

¶13. Gathings correctly points out that the prior motion and subsequent entry of an order to draw the jury panel from both judicial districts of the county was evidently done on an ex parte basis, and there was no separate motion filed in Gathings's case until the day of trial. Assuming arguendo, that there was error in the method that this order was entered, there are several principles to consider when dealing with this kind of alleged error. First, this Court has previously held that cases should be decided on an individual basis when determining whether a particular error constitutes reversible error. *Strickland v. State*, 784 So.2d 957, 965 (Miss. 2001). Second, when dealing with constitutional issues such as the right to a fair trial, this Court has held that reversal is not required if, on the whole record, the error was harmless beyond a reasonable doubt. *Alexander v. State*, 749 So.2d 1031, 1038 (Miss. 1999). Third, to require reversal the error must be of such magnitude as to leave no doubt that defendant was unduly prejudiced. *Dizon v. State*, 749 So.2d 996, 999 (Miss. 1999). Fourth, the motion brought by the State to draw juries from both districts of Chickasaw County, in accordance with Miss. Code Ann. § 13-5-21 involves a discretionary decision to be made by the trial judge. *Myers v. State*, 353 So.2d 1364, 1368 (Miss. 1978).

¶14. Without question, until the day of trial, Gathings did not receive a separate motion in his case pertaining to the drawing of jurors from both judicial districts of the county. But again, the record clearly reveals that Gathings's counsel had pre-trial knowledge of the entry of Judge Lackey's May 27th order which affected all cases in the Second Judicial District for two consecutive terms of court.

¶15. In considering and applying these principles to the record before us, if there were any error in drawing the jury venire from both judicial districts of the county, such error was harmless, beyond a reasonable doubt, and that certainly the error was not of such magnitude as to leave no doubt that the defendant was unduly prejudiced.

### II. DID THE GRANTING OF THE STATE'S MOTION TO DRAW THE JURY FROM BOTH JUDICIAL DISTRICTS IMPERMISSIBLY ALTER THE RACIAL MAKEUP OF THE VENIRE?

¶16. Gathings was alleged to have committed his crime in the Second Judicial District of Chickasaw County, and again he asserts that the trial court should have had the jury summoned from only the Second Judicial District of Chickasaw County.

¶17. Gathings's counsel argued at trial that since this was the first trial setting for Gathings, the trial court should have put forth a greater effort to pick the jury from Gathings's district, without pooling jurors from the majority white first district of the county. Gathings argued that if there were a mistrial or if the trial court found it impossible to find a fair jury from the one district, then it would be reasonable to choose jurors from both districts, but not without an effort by the State to first exhaust the second judicial district jurors. The lack of effort by the State and trial court to find an impartial jury in the Second District, Gathings proposes, indicates the State's underlying motive in altering the racial makeup of the jury.

¶18. In support of the State's motion to draw jury members from both judicial districts in Chickasaw County, the State commented on the difficulties of drawing a fair and impartial jury from the Second Judicial

District. The Second Judicial District has a jury pool of approximately 3,792 registered voters, compared to the First Judicial District's jury pool of approximately 8,677 voters. The State claimed that "most of the members of every jury venire impaneled in the last few years know the defendants through kinship, friendship, or family ties." As a result, the State contended that it was extremely difficult to find an impartial jury.

¶19. On the other hand, Gathings counters by pointing out that Miss. Code Ann. § 13-5-2 (Supp. 2001) provides: "[i]t is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court." Furthermore, Gathings relies heavily on the language in *Avery v. State*, 555 So.2d 1039 (Miss. 1990), *overruled on other grounds, Mayfield v. State*, 612 So.2d 1120, 1129 (Miss. 1992), which states, "courts must make every reasonable effort to comply with statutory method of drawing, selecting and serving jurors." *Avery*, 555 So. 2d at 1044. Gathings admits that the trial court has discretion in deciding whether or not to choose jurors from both districts. However, he relies on *Myers* for the proposition that each district within a two district county should be treated as if each district were a separate county. *Myers,* 353 So.2d at 1368. As for the small population, Gathings argues that there are several counties in Mississippi of comparable or lesser populations wherein courts have been capable of finding a fair and impartial jury.

¶20. Not only does Gathings argue that the State does not put forth enough proof that an impartial jury could not be found in the Second Judicial District, he also argues that the State's purpose for the motion is suspect. Gathings proposes that the State's reasons for choosing a jury from both judicial districts are pretextual. Gathings offers us some statistics. According to population studies at the University of Mississippi, the population of the First Judicial District of Chickasaw County is approximately 22.3% African-American and 77.7% Caucasian. The Second Judicial District population is approximately 55.8% African-American and 44.2% Caucasian. Gathings argues that there is a possibility that the State's motive was to get more Caucasians on the jury. Drawing jurors from the First Judicial District, Gathings argues, would help accomplish this motive. Even if there were no motive to get more Caucasians on the jury, Gathings still argues that he was entitled to have a jury from his own district. Based on these allegations, Gathings asks that this Court reverse and render him acquitted, or in the alternative, remand the case for a new trial.

¶21. As the State points out, the record shows that there were four African-Americans on the jury and one African-American who served as an alternate. Furthermore, as stated previously, the *Batson* challenge was waived for tardiness. Gathings does not deny that the *Batson* challenge was waived; therefore, this Court does not now address that issue. Gathings, the State adds, was not entitled to a given percentage of jury members of his own race. *See Gavin v. State*, 767 So.2d 1072, 1077 (Miss. Ct. App. 2000)(citing *Carr v. State*, 655 So.2d 824, 840 (Miss. 1995)). Also, in *De La Beckwith v. State*, 707 So.2d 547, 598 (Miss. 1997), this Court found that Beckwith failed to show he was prejudiced and failed to give any evidence that his jury was not chosen from a fair cross section of the community.

¶22. Likewise, in the case before us today, Gathings has failed to show that the trial court's actions impermissibly altered the racial makeup of the jury venire thereby denying his constitutional right to a trial by an impartial jury. Gathings had four African-Americans on the jury and one African-American alternate. As the record reveals, "there was a substantial amount of evidence that indicated Gathings' guilt" as to robbery. We are convinced that Gathings received a constitutionally fair trial and was not prejudiced by the entry of Judge Lackey's order.

¶23. We agree that Miss. Code Ann. § 13-5-21 should be utilized sparingly by the trial courts. Also, the trial courts must be sensitive to proper notice requirements concerning its actions. However, in the case before us today, even if somehow one could reasonably conclude that the entry of the order was error, such error was certainly harmless beyond a reasonable doubt. *Alexander v. State*, 749 So.2d at 1038. The "error" was certainly not of such magnitude as to leave no doubt that Gathings was unduly prejudiced. *Dizon v. State*, 749 So.2d at 999.

## CONCLUSION

¶24. For all of these reasons, we affirm the circuit court's judgment of conviction and sentence for the crime of robbery.

¶25. **CONVICTION OF ROBBERY (STRONG-ARM) AND SENTENCE OF FIFTEEN (15) YEARS IN AN INSTITUTION TO BE DESIGNATED BY THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TOGETHER WITH RESTITUTION TO THE VICTIM, COURT COSTS, BOND FEE AND CONTRIBUTION TO VICTIM'S COMPENSATION FUND IN AN AMOUNT TOTALING $598.00, AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB AND EASLEY, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND GRAVES, J..**

**DIAZ, JUSTICE, DISSENTING:**

¶26. I respectfully dissent from the majority's decision to affirm the robbery conviction and sentence of Marvin Dewayne Gathings.

¶27. I believe that Gathings was denied his constitutional right to be tried by a jury of his peers, based on the trial court's order to draw jury members from both judicial districts without giving Gathings the opportunity to first find a fair jury from his own district. The law in this state provides that the trial court must make every reasonable effort to draw the jury "at random from a fair cross section of the population of the area served by the court" to ensure that the defendant receives a fair and impartial jury. *Avery v. State*, 555 So. 2d 1039, 1044 (Miss. 1990), *overruled on other grounds, Mayfield v. State*, 612 So. 2d 1120, 1129 (Miss. 1992). *See also* Miss. Code Ann. § 13-5-21 (Supp. 2001). Furthermore, each district within a two district county should be treated as if each district were a separate county. *Myers v. State*, 353 So.2d 1364, 1368 (Miss. 1978).

¶28. The record suggests that Gathings's counsel was familiar with prior motions by the State to draw jurors from both districts. However, this does not excuse the State from serving individual notice on Gathings. There is no definite proof that Gathings was aware that this same motion was still effective for Gathings's trial. Because the trial court made no effort to find a jury from Gathings's district, I believe the trial court committed reversible error.

¶29. The blanket motion by the State has resulted in the systematic exclusion of a larger percentage of African-Americans for every case tried in the second judicial district of Chickasaw County. One might ask why no similar blanket order operates to the exclusion of whites in the majority white district. Without accusing anyone of any underlying racial motive, the mere appearance of the blanket order remains suspect

to any outside observer who is aware of the statistical disparity of the two districts. Furthermore, unfairness results from the systematic exclusion of the defendant's peers. The United States Constitution provides under the Sixth Amendment a right to a trial by an impartial jury of the state and *district* wherein the crime was committed. In this case, Gathings was apparently not entitled, for any valid reason, to a jury of his peers from his own district. Other defendants are privileged to have their juries drawn from their own district.

¶30. According to *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), to establish a prima facie violation of the fair cross-section requirement, the defendant must show the following:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury - selection process.

*Duren*, 439 U.S. at 364.

¶31. First, there is no doubt that African-Americans are a "distinctive" group in the community. Second, cases that have considered whether there was a violation of the cross-section requirement typically involve the percentage of the "distinctive" group in the jury venire in relation to the percentage of the "distinctive" group from the defendant's community. Gathings has not provided the Court with data that directly compares the jury venire with his community. However, Gathings has provided the Court with data that indicates that pooling the venire from the first district would certainly risk excluding a larger number of African-Americans from his own community. Third, a blanket order to pool jury members from both judicial districts inherently excludes a higher percentage of African-Americans from the jury pool. I believe that Gathings has shown that there is a significant disparity in the racial makeup of the second judicial district and the first judicial district. Because of this and because the trial judge did not at least attempt to draw the jury from Gathings's district, I believe that the trial court abused its discretion in drawing jurors from both judicial districts of Chickasaw County.

¶32. As the majority concedes, Miss. Code Ann. § 13-5-21 should be utilized sparingly, and trial courts must be sensitive to notice requirements. This trial court has abused its discretion by, in effect, ordering the systematic exclusion of a larger percentage of black jury members and replacing that pool of jury members with a larger percentage of white jury members from a separate district. This should be stopped now before similar cases arise on appeal due to the same type of blanket orders which abusively utilize Miss. Code Ann. § 13-5-21. For these reasons, I respectfully dissent.

**McRAE, P.J., AND GRAVES, J., JOIN THIS OPINION.**