LEE, J., for the court.
PROCEDURAL HISTORY
¶ 1. In August 2001, a Chickasaw County Circuit Court jury found Appellant Mitchell Gates guilty of aggravated DUI, and he was sentenced to serve twenty-five years in prison. Gates filed a motion for new trial, but it was overruled. He appeals to this Court arguing that the trial court erred in failing to issue a directed verdict, that the trial court erred in denying his motion to suppress, and the trial court erred in allowing non-residents of the Second Judicial District of Chickasaw County to sit on the jury. Finding no merit to these issues, we affirm.
FACTS
¶ 2. On July 4, 1999, Mitchell Gates and Linda Chapman were driving along County Road 148 in Chickasaw County when Gates, the driver, crossed lanes and hit an oncoming vehicle which was being driven by Donell Davidson. Both Chapman and Gates were thrown from the car, and Chapman died four days later as a result of her injuries. A test of Gates’s blood after the wreck revealed he had consumed alcohol prior to the accident.
DISCUSSION OF THE ISSUES
I. DID THE TRIAL COURT ERR IN FAILING TO ORDER A DIRECTED VERDICT?
¶ 3. With his first issue, Gates argues that the trial court erred in refusing to direct a verdict in his favor at the close of the State’s case-in-chief. We look to our standard of review:
In deciding whether the prosecution has presented sufficient evidence to sustain the verdict, the Court should accept as true all credible evidence consistent with the defendant’s guilt and the State must be given the benefit of all favorable in *1285 ferences that may be reasonably drawn from the evidence. A reviewing court should only reverse where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty.
George v. State, 812 So.2d 1103 (¶ 13) (Miss.Ct.App.2001) (citation omitted).
¶ 4. The gist of Gates’s argument is that the State did not comply with Miss.Code Ann. § 63-11-30 in failing to perform the blood analysis according to approved methods. The statute in question reads:
(1) It is unlawful for any person to drive or otherwise operate a vehicle within this state who ... (c) has an alcohol concentration of ten one-hundredths percent (.10%) or more for persons who are above the legal age to purchase alcoholic beverages under state law, or two one-hundredths percent (.02%) or more for persons who are below the legal age to purchase alcoholic beverages under state law, in the person’s blood based upon grams of alcohol per one hundred (100) milliliters of blood....
Miss.Code Ann. § 63-11-30 (Supp.2002). Gates argues that the State is required to find the percentage of alcohol in a person’s blood by testing grams of alcohol per one hundred milliliters of blood, and that this specific amount of blood must be drawn as a safeguard for accuracy. We do not read the statute to require this, rather we see this quantity listed as a means to calculate the percentage of alcohol in the blood.
¶ 5. Regardless of what we perceive as Gates’s misinterpretation of the statute, a directed verdict addresses the sufficiency of the evidence, and we find the evidence presented was sufficient to support the verdict: Michael Weaver from the Mississippi Crime Lab testified that three milliliters of blood were required to perform a blood alcohol test, and the samples provided were adequate to perform those tests which showed Gates had a .20 percent blood alcohol content; Gates, himself, admitted he had been drinking heavily the day before the accident until early in the morning hours; Aberdeen Police Officer Ed Mahar, who helped Gates into the ambulance, testified that Gates smelled of alcohol; and Dr. Steve Hayne, who performed the autopsy, testified that passenger Linda Chapman’s death was a result of the wreck. We find that this evidence is not such that reasonable and fair-minded jurors could only find Gates not guilty. We find no merit to this issue.
II. DID THE TRIAL COURT ERR IN FAILING TO GRANT APPELLANT’S MOTION TO SUPPRESS?
¶ 6. With this second issue, Gates argues the trial judge erred in admitting the results of the blood test conducted at the hospital. Gates initially consented to have his blood drawn, but after he was stuck three times, he told the nurse to stop because he was in pain from his injuries.
. ¶ 7. After the jury was sworn in but prior to opening statements, a hearing was held outside their presence concerning a motion to suppress evidence of Gates’s blood alcohol level. Officer Maher testified that once Gates arrived at the hospital after the accident, the officers asked Gates if they could get a blood sample. They explained that they could not perform the test unless he consented, and he told them several times they could. The nurse drew one vial of blood, but then had trouble finding a vein, and upon Gates’s complaints of pain elsewhere the nurse stopped drawing blood. Officer Maher testified at the hearing that he smelled a strong odor of alcohol on Gates, and this is why he wanted the blood test. Nurse Jimma Thorne testified that she drew the blood from Gates, and she affirmed that Gates- signed both the hospital’s consent form and the law enforcement’s consent form and that *1286 Gates was not coerced into signing either form. Officer Keith Roberson was also at the hospital at the time the blood was drawn. Roberson testified that he read Gates his rights as indicated on the form and Gates signed the consent form.
¶ 8. The trial judge conducted a hearing outside the presence of the jury to determine whether to admit the blood test results.
This Court has consistently ruled that “[t]he relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused.” Unless the trial judge’s discretion is so abused as to be prejudicial to a party, this Court will not reverse his or her ruling.
Buel v. Sims, 798 So.2d 425 (¶ 11) (Miss.2001) (citation omitted). The court reviewed all of this testimony, and combining this with the knowledge that Gates’s passenger was fatally injured, found probable cause existed to draw Gates’s blood, and determined that credible evidence existed to show that Gates freely and voluntarily gave his consent to draw the blood. The overwhelming weight of the evidence supports the judge’s decision to admit the evidence. Consequently, we find no abuse of discretion. Gates’s argument on this issue has no merit.
III. DID THE TRIAL COURT ERR IN DENYING THE APPELLANT’S MOTION TO QUASH THE JURY?
¶ 9. Gates argues the trial court erred in failing to provide him with a jury from the Second Judicial District of Chickasaw County; consequently, he argues he did not receive a fair trial. Gates specifically takes issue with the judge’s decision to include persons from both the First and Second Judicial Districts of Chickasaw County- in the jury pool, arguing that the judge could only cross the district lines if a request was made for a special venire, which did not happen. The Mississippi Supreme Court has stated that the statutory jury selection process is discretionary, and unless used in a matter which was fraudulent, unfair or deprived the defendant of due process, it does not warrant reversal. De La Beckwith v. State, 707 So.2d 547 (¶ 199) (Miss.1997). The relevant statute states:
In counties where there are two (2) circuit court districts, the jury commission shall make a list of jurors for each district in the manner directed for a county, and the same shall be treated in all respects as for an entire county. In such counties a juror shall not be required to serve out of his district, except should the court, in its discretion, otherwise direct, and except when drawn on a special venire. In either of such excepted cases, the jury shall be drawn from the two (2) jury boxes if the court so direct, one (1) name for each alternately.
Miss.Code Ann. § 13-5-21 (Rev.2002). In denying Gates’s motion to quash the jury, the judge explained that the jury pool from the Second Judicial District of Chickasaw County consisted of only 3500 people, making the task of finding an impartial jury difficult since many would be related to the victim or to Gates or to witnesses, and that to ensure a fair trial a jury pool needed to include both judicial districts.
¶ 10. The supreme court has upheld the trial court’s decision to select a jury from two judicial districts on several different occasions. See Thomas v. State, 818 So.2d 335 (¶¶ 5-8) (Miss.2002); Davis v. State, 660 So.2d 1228, 1260-61 (Miss.1995); Myers v. State, 353 So.2d 1364, 1369 (Miss.1978). Gates cites to De La Beckwith v. State, 707 So.2d 547 (Miss.1997), arguing that a special venire must be requested before a judge can cross district fines to find jurors; however, De La Beckwith also states that Gates must show prejudice, *1287 which he has failed to do here. Beckwith, 707 So.2d at (¶ 197). The supreme court has held that where there is “no evidence to show that the defendant was not tried by a fair and impartial jury, error may not be predicated for an irregularity in drawing or impaneling the jury.” Davis, 660 So.2d at 1261 (citing Taylor v. State, 148 Miss. 621, 626, 114 So. 390, 391 (1927)). We find no abuse of the trial judge’s discretion in denying Gates’s motion to quash the jury.
¶11. THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED DUI AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO CHICKASAW COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.