# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00540-SCT

*ROBERT L. YARBROUGH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/11/2004 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RODNEY A. RAY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/22/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., CARLSON AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     Robert L. Yarbrough was convicted of the sale of cocaine, in violation of Miss. Code Ann. § 41-29-139(a)(1) (Rev. 2001). The trial judge sentenced Yarbrough to a term of eighteen years' imprisonment in the custody of the Mississippi Department of Corrections. Yarbrough timely appealed and charges the trial court with two errors. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On March 11, 2002, Jamie Bozeman, a confidential informant for the Tri-County Narcotics Task Force, met with narcotics agents Don Bartlett and Patrick Evans to arrange an undercover drug buy. After this meeting, Bozeman went to the residence of Robert L.

Yarbrough, located in the Linwood community of Neshoba County, and purchased cocaine from him for $160, $40 for a rock of crack cocaine and $120 for powdered cocaine. Yarbrough was later arrested and then indicted on November 8, 2002, by the grand jury of Neshoba County for violating Miss. Code Ann. § 41-29-139(a)(1).[1]

¶3.     Trial of this matter was scheduled to begin on March 8, 2004.  At this time Yarbrough presented a motion to dismiss the indictment, or in the alternative, to continue the case until a jury consisting of a "reasonably sufficient number of members of the black race" could be empaneled.  The judge held a brief hearing on the motion but ultimately denied the motion.  The State opened its case the following day.  Jamie Bozeman testified that he purchased the cocaine from Yarbrough and made an in-court identification of him as the seller.  Agent Patrick Ervin also offered testimony as to the drug purchase made by Bozeman.  Ervin, in response to a question regarding a pre-buy meeting with Bozeman, stated that "we had talked to Mr. Bozeman about possibly who he could buy illegal drugs from.  He mentioned the name of Robert Yarbrough, which he called him by Peanut, which we knew of him through all our activity that we did here in the city."  Yarbrough's counsel objected and moved for a mistrial based on this statement.  The judge sustained Yarbrough's objection, instructed the jury to disregard the previous statement, and allowed the trial to continue.

---

[1] Miss. Code Ann. § 41-29-139(a)(1) states: "Except as authorized by this article, it is unlawful for any person knowingly or intentionally: (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance."  Miss. Code Ann. § 41-29-115 classifies cocaine as a Schedule II controlled substance.

¶4.    The trial concluded that day,  and the jury unanimously found Yarbrough guilty.  Two days later, the judge sentenced him to eighteen years' imprisonment with the Mississippi Department of Corrections.   Yarbrough's  motion for a judgment notwithstanding the verdict (JNOV), or in the alternative, for a new trial, was denied.   He then filed his timely notice of appeal.   On appeal, Yarbrough alleges that: (1) he was denied a fair trial based on the fact that the jurors did not represent a fair cross-section of the population of Neshoba County, Mississippi; and (2) the trial court erred in refused to grant a mistrial based on the  testimony of Patrick Ervin.  Finding no error, we affirm.

## DISCUSSION

I.    **Whether Yarbrough was denied a fair trial since the jurors did not represent a fair cross-section of the population of Neshoba County.**

¶5.    The Sixth Amendment to the United States Constitution[2] entitles a defendant  to a presumption of innocence until he is found guilty by an "impartial jury."   Mississippi insures this right through both statutory and case law.  Miss. Code Ann. § 13-5-2 (Rev. 2002) states:

> It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this

---

[2] The Sixth Amendment states:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. amend. VI.

chapter to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose. A citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin, or economic status.

This statutory policy has been reinforced by this Court, through its position that "courts must make every reasonable effort to comply with the statutory method of drawing, selecting and serving jurors" to keep the jury system "untainted and beyond suspicion." *Avery v. State*, 555 So. 2d 1039, 1044 (Miss. 1990), *overruled on other grounds*, *Mayfield v. State*, 612 So. 2d 1120, 1129 (Miss. 1992).

¶6.    Yarbrough argues that, despite these mandates of law, he was denied an impartial jury drawn from a representative cross-section of his community. The motion he presented at trial alleged that less than 2% of the approximately seventy-two people on the six jury panels were members of the black race. His counsel asserted that at least 40% of the residents of Neshoba County were black and that Yarbrough could not "get a fair trial unless he has some black people on the jury, at least in equal proportion to the county."[3] Robert Brooks, an attorney for the State, responded by saying that nine of the forty-four jurors on the four panels before the court were black and that this was a higher percentage of black jurors than Yarbrough alleged.[4]

---

[3] Yarbrough later asserted in his appellate brief that the blacks constitute 19.3% of the total population in Neshoba County, based upon data from the 2000 U.S. Census.

[4] Based on Brooks's statement, 20.5% of the venire from which Yarbrough's jury was chosen were black. Also, the March 2004 Petit Jury List consisted of seventy individuals on six juries, thirteen of whom were black, meaning that roughly 18.6% of the total jury pool was black.

Additionally, Brooks defended the venire by arguing that the proper question was not who is on the panels but rather the methods used for drawing the jurors.

¶7.    In *Duren v. Missouri*, 439 U.S. 357, 99 S. Ct. 664, 58 L.Ed.2d 579 (1979), the United States Supreme Court set forth the test for determining whether there has been a prima facie violation of the fair cross-section requirement.   The *Duren* Court ruled a Missouri statute, which exempted all women from jury duty during the process of jury selection if they requested the exemption, unconstitutional because the exemption unnecessarily diluted women from the jury pool, a violation the fair cross-section requirement of the Sixth Amendment. *Id*. at 370.   The test from *Duren* requires a defendant to show: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Id*. at 364.   The *Duren* test has also been adopted by this Court. *See Kolberg v. State*, 829 So. 2d 29, 86 (Miss. 2002); *Lanier v. State*, 533 So. 2d 473, 477 (Miss. 1988).

¶8.    Yarbrough contends that he has established all three elements necessary to prove a prima facie violation of the fair cross-section requirement, as articulated in *Duren*.   He claims the first element is established because the black population of Neshoba County, the group alleged to be excluded, constitutes a distinctive group within the county.   As the State has

5

offered no argument on this point, we find that the State has conceded this element as being established.

¶9.     Yarbrough also argues that he has established the second element of the *Duren* test because 19.3% of the population in Neshoba County is black yet not one member of the jury in this case was black.  The State rebuts this allegation with testimony from the motion hearing.  The State correctly notes that the proper test is not how many black people actually serve on the jury but rather whether the method used to draw the venire leads to a fair representation of the black population within Neshoba County.  See *Kolberg*, 829 So. 2d at  86; *Lanier*, 533 So. 2d at 477.   Counsel for the State also defended Yarbrough's allegation that blacks composed "less than two percent" of the venire with his assertion that nine of the forty-four panel members (20.5%) before the court were black, a higher percentage than Yarbrough's counsel alleged.  We find that Yarbrough has not introduced sufficient evidence to establish the second element of the *Duren* test for a prima facie violation  of the fair cross-section requirement.

¶10.    The third element of the *Duren* test, which Yarbrough claims he can establish, requires him to show that the under-representation of blacks is based on their systematic exclusion from the jury selection process.  *See Duren*, 439 U.S. at 364; *Kolberg*, 829 So. 2d at 86.  Yarbrough's argument on this element consists primarily of his trial counsel's motion, which stated that "[t]he pattern concerning make up as to race of jurors is more and more becoming a pattern in Neshoba County.  Defendant can not obtain a fair and impartial jury and trial under these circumstances . . ." unless a sufficient number of black jurors were seated.  Yarbrough

6

also cites to Justice Diaz's dissent in *Gathings v. State*, 822 So. 2d 266 (Miss. 2002), to support his proposition that the impartiality of the jury in this case is questionable, and a new trial necessary, because the number of blacks in the venire is out of proportion to their percentage of the population in Neshoba County. Yarbrough's argument is not consistent with what Justice Diaz actually said in *Gathings*. In *Gathings*, Justice Diaz dissented from the majority opinion because he felt that trial court's decision to allow the jury pool to be drawn from both districts of a two-district county "resulted in the systematic exclusion of African-Americans for every case tried in the second judicial district of Chickasaw County," which had a much higher African-American population than the first judicial district of the same county. *Gathings*, 822 So. 2d at 273 (Diaz, J., dissenting).

¶11. In *Duren*, the defendant introduced evidence that the female jurors were being systematically excluded from jury pools because of a state law which allowed women to get out of jury duty for any reason whatsoever. In *Gathings*, the defendant introduced evidence which showed that the inclusion of potential jurors from another judicial district within the county would diminish the pool of potential black jurors from his judicial district. Unlike these two cases, Yarbrough has offered no evidence, either in his motion at trial or on appeal, which alleges the type of systematic exclusion of a distinctive group found in either *Duren* or *Gathings*. In fact, during the hearing on Yarbrough's motion, the prosecution noted that Yarbrough had offered no evidence which suggested racial discrimination in the drawing or selection of jurors. We agree.

7

¶12. The fair cross-section requirement is not violated merely because the all-white jury in Yarbrough's case was not representative of the black community in Neshoba County, because as we noted in *Gathings,* a defendant is "not entitled to a given percentage of jury members of his own race." *Id*. at 272. To prevail on his challenge of the venire, he must prove a prima facie violation of the Sixth Amendment's fair cross-section requirement.

¶13. We find that Yarbrough has not met his burden. He has failed to prove that the black population of Neshoba County was not fairly or reasonably represented in the venire. Furthermore, he has offered no evidence, only mere assertions, that black citizens of Neshoba County are being systematically excluded from the jury selection process. Therefore, the trial judge did not err in denying Yarbrough's motion for a dismissal of the indictment or his alternative motion for a continuance.

## II. Whether the trial court erred in refusing to grant a mistrial based on the testimony of Patrick Ervin.

¶14. Yarbrough also alleges that the trial court erred in refusing to grant his motion for a mistrial which he made following a statement of narcotics agent Patrick Ervin. The prosecution was questioning Ervin regarding a meeting he had with another narcotics officer and a confidential informant when the following exchange took place:

Q: And what was the purpose of this meeting between the three of you?
A: We had talked to Mr. Bozeman about possibly who he could buy illegal drugs from. He mentioned the name of Robert Yarbrough, which he called him by Peanut, which we knew of him through all our activity that we did here in the city.
By Mr. Weir: Now, I object to that, Judge, and move the Court to grant a mistrial.

By the Court:      I am going to sustain the objection. The last statement of the witness, can all thirteen of you disregard that statement and not allow it to enter into your consideration at all? Will you do that? let the record show that all thirteen jurors state they will follow the Court's instructions.

¶15.  Yarbrough argues that this testimony is improper evidence of other crimes or bad acts which violates Mississippi Rules of Evidence (M.R.E.) 403[5] and 404(b).[6]  He acknowledges that the taint of an improper question or comment can normally be cured with the court's admonition to the jury yet argues that his situation is an example of "where the comment is so blatantly and clearly prejudicial, and where the instruction of the court would not ordinarily remove it from the minds of the jury" that reversal is required. *Criddle v. State*, 633 So. 2d 1047, 1048 (Miss. 1994).  Yarbrough additionally notes that this Court has held, under M.R.E. 404(b), that "admission of evidence of unrelated crimes or acts for the purpose of showing the accused acted in conformity therewith to be reversible error." *Smith v. State*, 724 So. 2d 280, 313-14 (Miss. 1998) (citations omitted).

---

[5] M.R.E. 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger o f unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[6] M.R.E. 404(b) states:

Evidence of other crimes, wrongs, or acts is not permissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

9

¶16.    Yarbrough   likens his situation to that in **_Burrell v. State_**, 727 So. 2d 761 (Miss. Ct. App. 1998), where the Mississippi Court of Appeals held that the trial court committed reversible error in admitting a confidential informant's testimony that he knew the defendant because he had previously purchased drugs from him.   In **_Burrell_**, the trial court actually held a  hearing  on  the  admissibility  of  this  evidence  and  admitted  it  over  defense  counsel's objections.  **_Id_**. at 768.   The Court of Appeals found that this testimony was not necessary to prove identity of the defendant, the reason the trial court gave for admitting the evidence.  **_Id_**. The **_Burrell_** Court also noted the trial court's failure to give a limiting instruction as to the purpose for which the prior bad acts testimony could be considered and reiterated the trial court's responsibility to issue a limiting instruction sua sponte if one is not requested.   **_Id_**. at 768-69.

¶17.    Yarbrough's situation is factually distinguishable from that in **_Burrell_**.    Here, the prosecutor  did  not  specifically  elicit  the  improper  testimony;  rather,  the  witness  gave  an answer that was more expansive than the question asked of him, whereas the judge in **_Burrell_** held a hearing on the proposed testimony before admitting it.   In **_Burrell_**, the informant explicitly stated that he had previously bought drugs from the defendant.   In the instant case, one  must  infer  that  Yarbrough  committed  other  crimes  based  on  the  narcotics  officer's statement that he knew Yarbrough "through all our activity that we did here in the city."   There is also a difference between the corrective measures taken in **_Burrell_** and this case.   The trial judge  in  **_Burrell_**  did  not  give  a  limiting  instruction  to  the  jury  regarding  the  prior  crimes

testimony which would have helped to limit any prejudicial effects of the testimony. In Yarbrough's case, the trial court quickly sustained defense counsel's objection to the improper testimony and admonished the jury to disregard Ervin's statement.

¶18. The State contends that a mistrial is not warranted because the trial court's actions, in sustaining Yarbrough's objection and admonishing the jury, were sufficient to cure any taint on Ervin's improper testimony. The State points out that "the granting of a mistrial is within the sound discretion of the trial judge." *Horne v. State*, 487 So. 2d 213, 214-15 (Miss. 1986). In *Wright v. State*, 540 So. 2d 1, 4 (Miss. 1989), we stated that a judge's admonition to the jury to disregard improper testimony or comments after sustaining an objection to such testimony would not be held in error, absent unusual circumstances. The State also advocates that this Court adhere to our rule that jurors are presumed to follow a judge's instructions because without this presumption, our jury system would be rendered inoperable. *Johnson v. State*, 475 So. 2d 1136, 1142 (Miss. 1985).

¶19. The parties' argument on this issue boils down to the State's contention that the trial court took sufficient action to correct the admission of Ervin's unsolicited improper testimony and Yarbrough's contention that the nature of Ervin's testimony is so prejudicial to him that nothing short of a mistrial can cure the admission of this "prior crimes" testimony. We find that the trial judge did everything he could, short of granting a mistrial, to keep the jury from considering the improper testimony of Patrick Ervin. He sustained defense counsel's objection and told the jury to disregard Ervin's previous statement, which the jury

11

agreed to do. These actions were sufficient to cure any potential prejudice in Ervin's testimony. Thus, the trial court did not abuse its discretion in refusing to grant a mistrial.

## CONCLUSION

¶20.    We find that the trial court did not err in denying Yarbrough's motion for a dismissal of the indictment or his alternative motion for a continuance. We also find that the trial court did not abuse its discretion in refusing to grant Yarbrough's motion for a mistrial. Accordingly, we affirm the judgment of the Neshoba County Circuit Court.

¶21.    **CONVICTION OF SALE OF COCAINE AND SENTENCE OF EIGHTEEN (18) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

    **SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**

12